904 So.2d 1265 (2004)
Sedrick ALEXANDER
v.
STATE of Alabama.
No. 2021143.
Court of Civil Appeals of Alabama.
April 30, 2004.
Opinion Overruling Application for Rehearing June 25, 2004.
Certiorari Denied January 14, 2005.
*1266 Connie Cooper, Phenix City, for appellant.
Greg Waldrep, asst. district atty., Phenix City, for appellee.
Alabama Supreme Court 1031545.
THOMPSON, Judge.
Sedrick Alexander appeals from a judgment in which the trial court ordered the condemnation of, among other things, a 1995 Chevrolet Impala automobile.
The record indicates that on May 5, 2002, Anthony Grier was arrested on an outstanding warrant. As a result of the arrest, the State of Alabama confiscated a number of items, including $126.53[1] in currency, a Ruger nine-millimeter handgun, a *1267 1995 Chevrolet Impala ("the vehicle"), and two bags containing cocaine and marijuana.[2]
On May 8, 2002, the State filed a petition to have the items it seized at the time of Grier's May 5 arrest condemned pursuant to § 20-2-93, Ala.Code 1975. The trial court entered a default judgment on January 19, 2003, in which it ordered the property listed in the State's May 8, 2002, petition condemned and forfeited to the State. Two days later, on January 21, 2003, Grier filed in the trial court a document in which he consented to the forfeiture of the property seized, except for the vehicle, which, he asserted, did not belong to him.
On January 29, 2003, Alexander filed a motion to intervene and asserted a claim to the vehicle. Although the trial court did not rule on Alexander's motion, it scheduled the matter for a hearing. After receiving ore tenus evidence at a hearing on July 24, 2003, the trial court, on July 25, 2003, entered a judgment in which it condemned, among other things, the vehicle and ordered the vehicle forfeited to the State. Alexander appeals that part of the judgment ordering the forfeiture of the vehicle.
The transcript of the condemnation hearing is not a model of clarity, but the following facts are apparent from the record. The testimony at the July 24, 2003, ore tenus hearing indicates that there was some question as to whether Alexander actually had clear title to the vehicle. The trial court, in entering its judgment, found that in light of its decision to order the vehicle forfeited to the State, it was unnecessary for it to resolve the issue whether Alexander had a valid claim of ownership of the vehicle. Therefore, we omit a discussion of the facts pertaining to that issue. However, we note that Alexander's testimony on that issue was sometimes contradictory and could have led the trial court to conclude that his testimony was not always credible.
Harold Smith, the sheriff's deputy who arrested Grier, testified at the condemnation hearing. Smith stated that Grier had a reputation for selling drugs; it is undisputed that Grier has served time, either in jail or in prison, for possessing and for selling controlled substances. Smith stated that before the vehicle was seized there was an outstanding warrant issued for Grier's arrest on a drug charge and that, in the course of looking for Grier, he had noticed the vehicle parked for approximately one month in front of a house on Farm Road. Alexander's aunt, Grier's mother, lives in that house on Farm Road. Alexander testified that Grier sometimes stayed with his mother in the house on Farm Road.
Smith testified that on May 5, 2002, he saw the vehicle at a gas station. He stated that the vehicle was parked directly behind a maroon Ford Explorer sport-utility vehicle and that its engine was still running. Smith recognized Grier, who was standing near the driver's door of the Explorer. Smith testified that when he saw Grier near the Explorer he believed that Grier was conducting a transaction with the driver of the Explorer. Smith testified that he could not tell whether Grier was selling or purchasing illegal drugs.
According to Smith, as he approached the two vehicles, Grier saw him and threw two bags onto the ground. It was later determined that those bags contained marijuana and cocaine. Smith testified that he struggled with Grier and that, taking advantage of Smith's distraction, the occupants of the Explorer and a person who *1268 had been in the vehicle ran from the scene; those persons had not been apprehended at the time of the condemnation hearing. The Explorer was seized by the State; nobody claimed ownership of it, and it was ordered forfeited to the State.
Smith testified that at the time of his arrest, Grier admitted that he owned the property the officers seized and that Grier never asserted that he did not own the vehicle. As a result of his May 5, 2002, arrest, Grier pleaded guilty to charges of first-degree possession of marijuana and first-degree possession of cocaine; the record does not indicate Grier's sentences for those convictions.
Alexander testified that on May 4, 2002, the night before Grier's arrest, he had gone to a nightclub or bar with Grier. Alexander stated that because he was too intoxicated to drive, Grier drove him home in the vehicle. Alexander stated that Grier then used the vehicle to drive himself home. Alexander testified that at the time he allowed Grier to use the vehicle, he knew that Grier had been convicted numerous times for possession of illegal drugs and for selling illegal drugs. However, Alexander stated that he did not believe Grier would sell drugs in the vehicle.
A substantial portion of Alexander's testimony involved his attempts to explain why he or other drivers of the vehicle had been pulled over and cited for having a "switched" tag. Detailing those explanations would serve no useful purpose.
Alexander testified that he had paid $12,000 in cash from his own savings to purchase the vehicle in 2001. He admitted, however, that he could not produce evidence indicating that he had withdrawn the $12,000 from a bank account; he claimed that he kept his savings in a friend's bank account. Alexander presented no evidence regarding the value of the vehicle at the time it was seized on May 5, 2002. Upon questioning by the trial court, the attorney for the State stated that the drugs seized were valued at approximately $1,000.
The trial court's findings contained in its judgment are as follows:
"1. The vehicle was seized on May 5, 2002. At the time of its seizure, the vehicle was being utilized by Anthony Grier to facilitate the transportation, sale, receipt, possession, or concealment of marijuana and cocaine, both controlled substances.
"2. That at the time set forth above, Anthony Grier was using the vehicle with the permission of [Alexander].
"3. Alexander loaned the vehicle to Grier and/or permitted Grier to use the vehicle either knowing Grier's intended purpose and/or Alexander could have obtained such knowledge by the exercise of reasonable diligence."
With regard to the standard of review in a forfeiture case, this court has stated:
"Ala.Code 1975, § 20-2-93 (as revised), is penal in nature and must be strictly construed. Agee v. State ex rel. Galanos, 627 So.2d 960 (Ala.Civ.App.1993). To properly seize, condemn, and submit property to forfeiture pursuant to § 20-2-93, the State must first make a prima facie case, and the requisite burden of proof is to the trial court's reasonable satisfaction. Agee, supra; State v. Smith, 578 So.2d 1374 (Ala.Civ.App.1991)."
Wherry v. State, 637 So.2d 890, 892 (Ala.Civ.App.1994).
On appeal, Alexander first argues that the trial court's judgment should be reversed insofar as it orders the forfeiture of the vehicle, because, Alexander contends, the evidence does not support a *1269 conclusion that he knew or could have known that Grier would use the vehicle to sell or transport controlled substances. Alexander cites Robbs v. State ex rel. Whetstone, 674 So.2d 1301 (Ala.Civ.App.1995), and Grant v. State, 668 So.2d 20 (Ala.Civ.App.1995), in support of his argument on this issue. Alexander does not challenge the trial court's finding that Grier used the vehicle to violate the Alabama Uniform Controlled Substances Act, § 20-2-1 et seq., Ala.Code 1975.
In Robbs, supra, the appellant's brother was arrested and the officers seized, among other things, a set of keys that included a key to the appellant's vehicle. The arresting officer testified that he had only seen the appellant's brother drive the vehicle and that the brother had told him that although the vehicle was listed in the appellant's name it was actually the brother's vehicle. On the night of the brother's arrest, the appellant had allowed the brother to drive the vehicle home. This court reversed the trial court's judgment ordering the vehicle forfeited, noting that there were no drugs in the vehicle when it was seized and concluding that the vehicle had not been "`used to facilitate a violation of the Alabama Controlled Substances Law.'" 674 So.2d at 1303.
In Grant, supra, the appellant's boyfriend borrowed her vehicle. The boyfriend was later arrested and illegal drugs were found in the vehicle. The arresting officer testified that the night of the arrest was the first time he had seen the boyfriend driving the vehicle. This court reversed the trial court's condemnation order, concluding that the State had failed to present evidence that the appellant knew the drugs were in the vehicle or that the vehicle was intended to be used in a drug transaction.
It is not clear from either Robbs or Grant that the appellants in those cases knew or had reason to know that the person who borrowed the appellant's vehicle had violated or might violate the Controlled Substances Act. In this case, however, Alexander knew that Grier had previously been convicted on more than one occasion of drug-related offenses, including convictions on charges of selling illegal drugs. Although Smith testified that the day of the arrest was the first time he had seen Grier driving the vehicle, he also testified that he had regularly seen the vehicle parked outside Grier's mother's house. Alexander testified that he did not think that Grier would use the vehicle while violating the Controlled Substances Act, but the trial court found that Alexander either knew or could have known that fact, given his knowledge of Grier's past drug-related offenses.
"Where a trial court receives ore tenus evidence, its factual findings based on that evidence will not be reversed absent a showing that they are plainly or palpably wrong and amount to an abuse of discretion." Hillegass v. State, 795 So.2d 749, 753 (Ala.Civ.App.2001). Given the evidence contained in the record on appeal, we cannot say that the trial court's factual findings are plainly and palpably wrong. The record contains evidence to support a finding that the State established, to the trial court's reasonable satisfaction, that the vehicle was due to be forfeited to the State on the basis that Alexander knew or could have known that Grier would use the vehicle to sell or transport controlled substances. See Wherry v. State, supra. Therefore, the trial court did not err with regard to this issue.
Alexander also argues that the forfeiture of the vehicle amounts to an excessive fine that violates the Eighth Amendment to the United States Constitution. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor *1270 excessive fines imposed, nor cruel and unusual punishments inflicted." In discussing whether a forfeiture constitutes an excessive fine under the Eighth Amendment, our supreme court has stated:
"In United States v. Bajakajian, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), the Supreme Court established a standard for determining whether a forfeiture constitutes an excessive fine for purposes of the Eighth Amendment. The Supreme Court held that `a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense.' 524 U.S. at 334, 118 S.Ct. at 2036. The Supreme Court explained:
"`In applying this standard, the district courts in the first instance, and the courts of appeals, reviewing the proportionality determination de novo, must compare the amount of the forfeiture to the gravity of the defendant's offense. If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional.'
"524 U.S. at 336-37, 118 S.Ct. 2028. The Supreme Court stated that, in determining excessiveness, (1) `judgments about the appropriate punishment for an offense belong in the first instance to the legislature,' and (2) `any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise.' 524 U.S. at 336, 118 S.Ct. 2028."
Ex parte Dorough, 773 So.2d 1001, 1004 (Ala.2000).
In Ex parte Dorough, supra, our supreme court remanded a case to the trial court for a determination whether the forfeiture constituted an excessive fine. In that case, the record did not indicate the value of the vehicle seized, the amount of illegal drugs seized, or the criminal charge asserted against the appellant as a result of the arrest. Ex parte Dorough, 773 So.2d at 1004.
In United States v. Bajakajian, discussed in the quote from Ex parte Dorough, supra, Bajakajian attempted to leave the United States without reporting that he was transporting $357,144 out of the country; the law requires that a person report that they are transporting more than $10,000 when leaving the United States. The government sought to have the entire $357,144 forfeited. The federal district court found that the forfeiture of the entire $357,144 would be grossly disproportional to the offense, and it therefore ordered only $15,000 forfeited; the United States Court of Appeals for the Ninth Circuit affirmed. The United States Supreme Court affirmed, holding, in part, that the forfeiture of the entire $357,144 would violate the Eighth Amendment as an excessive fine because it was grossly disproportionate to the offense for which Bajakajian was charged. In so holding, the Supreme Court noted, among other things, that the maximum sentence that could be imposed upon Bajakajian for his offense was six months' imprisonment and a $5,000 fine.
In this case, an attorney for the State represented that the illegal drugs seized were worth $1,000. Grier pleaded guilty to first-degree possession of marijuana and first-degree possession of cocaine. The maximum fines for those two offenses total $10,000. See § 13A-12-213, Ala.Code 1975; § 13A-12-212, Ala.Code 1975; and § 13A-5-11, Ala.Code 1975. Further, the trial court specifically found that Alexander knew or could have known that Grier would use the vehicle to violate the Controlled Substances Act.
Alexander asserts in his brief on appeal that the vehicle was "worth $12,000." The *1271 record contains no evidence regarding the value of the vehicle at the time it was seized. The evidence in the record indicates only that Alexander claimed to have paid $12,000 for the vehicle in 2001. However, other evidence seemed to call that testimony into question, and a determination of the value of the vehicle is a factual issue to be resolved by the trial court.
Accordingly, we must remand this action to the trial court to take additional evidence to determine the value of the vehicle and to make a determination as to whether the forfeiture of the vehicle constitutes an excessive fine under the Eighth Amendment.
REMANDED WITH INSTRUCTIONS.
YATES, P.J., and PITTMAN, J., concur.
MURDOCK, J., concurs in part and dissents in part, with writing, which CRAWLEY, J., joins.
MURDOCK, Judge, concurring in part and dissenting in part.
Because I would affirm in its entirety the trial court's judgment ordering the forfeiture of the vehicle, I concur in part and dissent in part. Specifically, I agree with the main opinion insofar as it concludes that the record contains substantial evidence supporting the trial court's finding that Alexander knew or could have known through the exercise of reasonable diligence that Grier would use the vehicle to sell or transport controlled substances. Unlike the main opinion, however, I do not believe this cause should be remanded based on Alexander's Eighth Amendment "excessive fines" argument.
In Ex parte Dorough, 773 So.2d 1001 (Ala.2000), the Supreme Court stated the following reasons for its remand of that case to the trial court for consideration of the petitioner's Eighth Amendment "excessive fines" argument:
"[W]e cannot undertake the proportionality analysis established in [United States v.] Bajakajian[, 524 U.S. 321 (1998),] and followed by this Court in [Ex parte] Kelley, [766 So.2d 837 (Ala. 1999),] because the record here is insufficient for us to do so. No evidence in the record indicates the value of Dorough's truck, the amount of cocaine seized from the truck, or the criminal charge, if any, made against Dorough. Dorough and the State agree that a remand is necessary so that the trial court can determine, as a fact, the value of Dorough's truck."
Ex parte Dorough, 773 So.2d at 1004-05.
In the present case, however, the parties do not agree that a remand is necessary. Further, the criminal charges at issue are known: Anthony Grier, the driver of the vehicle, pleaded guilty to charges of first-degree possession of marijuana (see § 13A-12-213, Ala.Code 1975) and possession of cocaine (see § 13A-12-212, Ala. Code 1975). Under § 13A-5-11, Ala.Code 1975, a total of $10,000 in fines could potentially be imposed as punishment for these two offenses. The record contains evidence that Alexander paid $12,000 for the vehicle approximately one year before Grier's arrest. I see nothing in the record to prevent the trial court from reasonably inferring, based upon that evidence, that the value of the vehicle at the time of the condemnation hearing was $12,000 or some lesser amount. Accordingly, I conclude that the record in the present case, unlike the record in Ex parte Dorough, is sufficient to allow us to undertake the requisite *1272 proportionality analysis.[3] Having undertaken that analysis, I would affirm the trial court's judgment.
CRAWLEY, J., concurs.

On Application for Rehearing
THOMPSON, Judge.
On application for rehearing, the State argues that there should be no requirement that a court apply a proportionality test to determine whether the forfeiture of a vehicle constitutes an excessive fine under the Eighth Amendment to the United States Constitution when the vehicle, like the vehicle in this case, was "directly involved" in the commission of a crime. The State asserts this argument for the first time on application for rehearing. Our supreme court has stated:
"`"We can not sanction the practice of bringing up new questions for the first time, in an ex parte application for rehearing." Robinson v. Allison, 97 Ala. 596, 604, 12 So. 604[, 604] (1893) (on application for rehearing). "We cannot sanction the practice of bringing up new questions for the first time in application for rehearing." Kirkland v. Kirkland, 281 Ala. 42, 49, 198 So.2d 771, 777 (1967) (on application for rehearing). "We cannot sanction the practice of bringing up new questions for the first time in applications for rehearing." Cole v. Cole Tomato Sales, Inc., 293 Ala. 731, 735, 310 So.2d 210, 212 (1975) (on application for rehearing). "New supporting arguments presented for the first time on rehearing generally will not be considered." Stover v. Alabama Farm Bureau Ins. Co., 467 So.2d 251, 253 (Ala. 1985) (on application for rehearing). "[T]his argument was raised for the first time on application for rehearing, and therefore will not be considered." Schulte v. Smith, 708 So.2d 138, 141 n. 2 (Ala.1997) (on application for rehearing).'"
Water Works & Sewer Bd. of Selma v. Randolph, 833 So.2d 604, 609 (Ala.2002) (opinion on application for rehearing)(quoting Ex parte Lovejoy, 790 So.2d 933, 938-39 (Ala.2000)) (emphasis added). This court is bound by the holdings in Randolph and the authorities cited therein; therefore, we may not consider the State's argument presented for the first time on application for rehearing.
APPLICATION OVERRULED.
YATES, P.J., and PITTMAN and MURDOCK, JJ., concur.
CRAWLEY, J., dissents, without writing.
NOTES
[1] The amount of currency actually seized totaled $127.53, but the trial court found in its judgment that the amount of currency seized was $126.53; the discrepancy appears to be a clerical or mathematical error.
[2] The record does not indicate the amount of illegal drugs contained in those bags.
[3] Even if the record were deficient with respect to the vehicle's value, however, Alexander would have only himself to blame for that deficiency, and, given the fact that the State agreed to a remand in Ex parte Dorough, I am not prepared to say that Ex parte Dorough would require this court to remand the present case. See United States v. Bajakajian, 524 U.S. 321, 348, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998)(Kennedy, J., dissenting) ("Turning to the question of excessiveness [under the Eight Amendment], the majority states the test: A defendant must prove a gross disproportion before a court will strike down a fine as excessive." (Emphasis added.)); United States v. 817 N.E. 29th Drive, Wilton Manors, Fla., 175 F.3d 1304, 1309 (11th Cir.1999) (referencing the property owner's burden of demonstrating that his right under the Eighth Amendment had been violated).