985 So.2d 434 (2007)
Rodgetta Colvin JETT
v.
LAWYERS TITLE INSURANCE CORPORATION.
2050989.
Court of Civil Appeals of Alabama.
February 16, 2007.
Opinion Overruling Rehearing May 25, 2007.
*435 James M. Wooten, Birmingham, for appellant.
Jesse P. Evans III and Michael B. Odom of Haskell Slaughter Young & Rediker, LLC, Birmingham, for appellee.
THOMPSON, Presiding Judge.
Rodgetta Colvin Jett appeals a summary judgment entered by the Circuit Court of Jefferson County (hereinafter "the trial court") in favor of Lawyers Title Insurance Corporation ("Lawyers Title") in an action by Lawyers Title seeking to foreclose on a mortgage.
The record indicates that on January 9, 1995, Mary Craig Bryant executed a deed purporting to convey certain real property ("the property") to Jett. Also on that date, Bryant executed a will conveying her entire estate to Jett. Bryant died on March 14, 1995. On July 24, 1995, Jett granted a mortgage ("the mortgage") on the property to AmSouth Bank of Alabama ("AmSouth") to secure a loan; in other words, the property purportedly conveyed to Jett by the January 9, 1995, deed secured the mortgage indebtedness.
On March 26, 1996, the Jefferson County Probate Court (hereinafter "the probate court"), on the motion of Bryant's estate, entered an order declaring the January 9, 1995, deed from Bryant to Jett to be "null and void." Accordingly, the probate court set aside the January 9, 1995, deed. Also in its March 26, 1996, order, the probate court mentioned that two wills executed by Bryant had been filed in that court, that one of the wills was the January 9, 1995, will in favor of Jett, and that proceedings contesting the validity of both wills were pending before that court. In the March 26, 1996, order, the probate court made no finding as to the validity of the January 9, 1995, will. There is no indication in the record on appeal that AmSouth was a party to or received notice of the probate court proceeding that resulted in the March 26, 1996, order declaring the January 9, 1995, deed to be void.
In August 1997, Jett filed for Chapter 13 bankruptcy protection and listed the mortgage on the list of her indebtedness; AmSouth appears to have been listed as both a "secured" and an "unsecured" creditor in the bankruptcy proceeding. AmSouth filed a motion for relief from the automatic stay in the bankruptcy proceeding, and on March 23, 1998, that motion was granted "by consent." The record does not indicate the nature of the relief granted "by consent." In June 1998, Jett's bankruptcy proceeding was converted to one filed pursuant to Chapter 7. Jett's debts were discharged in bankruptcy in February 1999.
*436 On November 21, 2000, the probate court, after considering the contest of the validity of Bryant's January 9, 1995, will, entered an order in favor of Jett. It that order, the probate court determined that the January 9, 1995, will was not a product of undue influence and that the will was valid.
In July 2001, AmSouth assigned the mortgage to Lawyers Title. Shortly thereafter, in August 2001, Lawyers Title filed a complaint against Jett in the trial court seeking a judgment in its favor for amounts not paid on the mortgage indebtedness and seeking the foreclosure of the mortgage and the sale of the property. Jett answered, denying liability and citing her 1999 discharge in bankruptcy as a defense to the claim against her. Jett also counterclaimed; she alleged that any claim Lawyers Title might assert against her was discharged in bankruptcy, and she sought an award of damages. Lawyers Title amended its complaint to seek only the foreclosure of the mortgage.
Lawyers Title moved for a summary judgment on its foreclosure claim, and Jett opposed that motion. On June 21, 2006, the trial court entered a summary judgment in favor of Lawyers Title; it certified the summary-judgment order as final pursuant to Rule 54(b), Ala. R. Civ. P. Jett timely appealed. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.
A motion for a summary judgment is properly granted where no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; Bussey v. John Deere Co., 531 So.2d 860 (Ala.1988). "When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present `substantial evidence' creating a genuine issue of material fact." Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999) (citing Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989)). "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In reviewing a summary judgment, this court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts concerning the existence of a genuine issue of material fact against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
Before the trial court, Lawyers Title conceded that the resolution of Jett's bankruptcy proceeding had released her personal liability on the mortgage indebtedness. See 11 U.S.C. § 524(a) (a debtor's personal liability for a debt is extinguished by a discharge in bankruptcy). However, Lawyers Title argued that the mortgage constituted a lien on the property and that it could seek to enforce that lien through its foreclosure action. Lawyers Title's argument sets forth a correct statement of the law pertaining to a debtor's personal liability with regard to secured creditors after the debtor receives a discharge in bankruptcy. Johnson v. Home State Bank, 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) ("[A] discharge [under Chapter 7] extinguishes only `the personal liability of the debtor.' [A] creditor's right to foreclose on the mortgage survives or passes through the bankruptcy."); Guild Mortgage Co. v. Cornist (In re Cornist), 7 B.R. 118, 121 (Bankr.S.D.Cal.1980) ("when the stay is terminated such a creditor with a secured claim may proceed against the collateral").
In this case, however, Jett argues that Lawyers Title is an unsecured creditor. *437 As the basis for that argument, Jett cites the March 26, 1996, probate court order that declared the January 9, 1995, deed to be void. Jett contends that when the probate court determined that the January 9, 1995, deed was void, the mortgage, which had been secured by the property that had been the subject of the voided deed, became an unsecured debt. Jett maintains that the mortgage, because it was an unsecured debt, was discharged pursuant to the bankruptcy court's 1999 discharge order. Lawyers Title maintains, however, that the mortgage survived the bankruptcy discharge as a secured debt.
In its summary-judgment motion filed in the trial court, Lawyers Title alleged that the March 26, 1996, probate court order was itself void because AmSouth, the predecessor in interest to Lawyers Title that held legal title to the property as the mortgagor, was not included as a party to the probate court action. Lawyers Title maintains that because its predecessor in interest did not have notice of the 1996 probate court proceedings, it should be deemed to have maintained a secured interest in the property. However, our supreme court has stated that "if a deed is void[,] a subsequent innocent purchaser is not protected." Barden v. Grace, 167 Ala. 453, 455, 52 So. 425, 426 (1910). We note, however, that in some situations, a bona fide purchaser of property that was purportedly conveyed by a void deed might maintain a secured interest in the property. See Cumberland Capital Corp. v. Robinette, 57 Ala.App. 697, 331 So.2d 709 (Civ.1976) (in addition to concluding that the mortgage based on a fraudulently obtained deed was void because the deed was void, the court also noted that the plaintiff's conduct was not so negligent as to make a mortgagor of the property that was purportedly conveyed by a fraudulently obtained deed a bona fide purchaser for value). The facts surrounding whether AmSouth had notice of the probate court proceeding or whether AmSouth might have enjoyed a status that would have enabled it to maintain an interest in the property after the invalidation of the deed are not before this court. We agree with Jett that any questions as to whether AmSouth and its successors in interest should be afforded relief from the March 26, 1996, probate court order, should have been resolved in a proceeding under Rule 60(b), Ala. R. Civ. P., or in an independent proceeding.
"Usually, a party seeking postjudgment relief under Rule 60(b) does so in the court that originally rendered the judgment, but, `[i]f relief does not appear to be available under the rule, or if relief from the judgment is sought in some other court than the court which rendered the judgment, the party should bring an independent proceeding.' Rule 60, Ala. R. Civ. P., Committee Comments on 1973 Adoption."
Pinkerton Sec. & Investigation Servs., Inc. v. Chamblee, 961 So.2d 97, 104 (Ala.2006).
"The normal procedure for attacking a judgment after the time for appeal has run is by a motion filed under Rule 60(b), [Ala.] R. Civ. P. If relief does not appear to be available under that rule, or if relief is sought in some court other than the one which rendered the judgment, the party may bring an independent proceeding."
Braxton v. Stewart, 451 So.2d 266, 267 (Ala.1984).
Nothing in the record currently before this court indicates that Lawyers Title filed a motion in the probate court seeking to set aside the March 26, 1996, order that declared the January 9, 1995, deed to be void. Lawyers Title did not file an independent action in the trial court or seek in this action to have the March 26, 1996, *438 probate court order declared void. The trial court, in its summary-judgment order, makes no reference to the March 26, 1996, probate court order. Thus, it does not appear that Lawyers Title has sought or obtained relief from the March 26, 1996, probate court order, and that order is still in force. Therefore, because the deed has been declared to be invalid, it cannot support the mortgage.
Accordingly, we must agree with Jett's argument that the mortgage became an unsecured debt when the January 9, 1995, deed was declared void. Barden v. Grace, supra. All of Jett's unsecured debts, including those to AmSouth, Lawyers Title's predecessor in interest, were discharged in the 1997 bankruptcy proceedings, and, therefore, no proceedings could be instituted against Jett to enforce the mortgage agreement. 11 U.S.C. § 524(a). Only a secured debt may survive bankruptcy, and even then the debt may only be enforced against the secured property and not against the debtor in a personal capacity. Johnson v. Home State Bank, supra. In this case, because the mortgage was an unsecured debt at the time the bankruptcy proceeding was instituted, the mortgage could not be enforced against the property after the bankruptcy discharge. Given the facts of this case, we must conclude that the mortgage that Lawyers Title is seeking to enforce did not survive Jett's bankruptcy proceeding.
We note that Lawyers Title has made an argument that the trial court's judgment may be affirmed on a different theory. See Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000) ("[A]n appellate court can affirm a summary judgment on any valid argument, regardless of whether the argument was presented to, considered by, or even rejected by the trial court."). Lawyers Title has asserted as an alternate theory for affirming the trial court's judgment an argument based upon the doctrine of after-acquired title. Our supreme court has explained the equitable doctrine of after-acquired title as follows:
"There are numerous Alabama cases which support the after-acquired-title proposition of law, and one of the best statements is contained in Doolittle v. Robertson, 109 Ala. 412, 19 So. 851 (1895):
"`In no State perhaps has the rule been more rigidly adhered to than in this, "that when one sells land to which he has no right, with warranty of title, and he afterwards acquires a good title, it passes instantly to his vendee, and he is estopped from denying that he had no right at the time of the sale."...'
"In Porter v. Henderson, 203 Ala. 312, 82 So. 668 (1919), this Court declared:
"`[I]f one having no title convey[s] lands by express warranty or by the warranty which the law implies from the use of the words "grant, bargain, sell, and convey," and thereafter acquires title, "such title will inure and pass eo instanti to his vendee...."'"
Turner v. Lassiter, 484 So.2d 378, 380 (Ala.1985).
Lawyers Title argues that, even assuming that the mortgage was unenforceable by virtue of the discharge in bankruptcy, it later became a valid lien under the doctrine of after-acquired title. Lawyers Title argues that Jett gained title to the property through inheritance pursuant to the November 21, 2000, probate court order that resolved the will-contest proceeding. Lawyers Title contends that the 1995 mortgage document between Jett and AmSouth provided that Jett "does hereby grant, bargain, sell and convey unto [AmSouth the property]." Therefore, according to Lawyers Title, even if AmSouth did not maintain a secured interest in the *439 property after the January 9, 1995, deed was declared invalid, title passed to AmSouth pursuant to the mortgage document once Jett inherited the property in 2000.
As a procedural matter, we note that the mortgage document to which Lawyers Title refers is not included in the materials composing the record on appeal. Lawyers Title included that document as an appendix to its brief submitted to this court. However, "[t]his court is bound by the record which was made by the litigants in the trial court, and we cannot consider such extraneous material." Wilger v. State Dep't of Pensions & Sec., 390 So.2d 656, 657 (Ala.Civ.App.1980).
Further, even if this court assumed that the mortgage contained the fairly standard language advanced by Lawyers Title, we must still conclude that there is no merit to Lawyers Title's argument on this issue. The bankruptcy code bars the application of the doctrine of after-acquired title in situations in which title is acquired after the commencement of a bankruptcy proceeding. The pertinent section provides:
"(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case."
11 U.S.C. § 552(a). The "Historical and Statutory Notes" following 11 U.S.C. § 552 provide, in part:
"Under the Uniform Commercial Code, article 9, creditors may take security interests in after-acquired property. Section 552 governs the effect of such a prepetition security interest in postpetition property. It applies to all security interests as defined in section 101(37) of the bankruptcy code, not only to U.C.C. security interests.
"As a general rule, if a security agreement is entered into before the commencement of the case, then property that the estate acquires is not subject to the security interest created by a provision in the security agreement...."
In this case, Jett obtained title to the property that had been subject to the mortgage in 2000, well after both the entry of the 1996 probate court order invalidating her January 9, 1995, deed to the property and the 1999 discharge of her debts in bankruptcy. Therefore, we must conclude that under 11 U.S.C. § 522(a), the property is not subject to the mortgage that was created before Jett commenced her bankruptcy proceeding. Accordingly, we must reverse the trial court's summary judgment in favor of Lawyers Title.
REVERSED AND REMANDED.
BRYAN, J., concurs.
PITTMAN, THOMAS, and MOORE, JJ., concur in the result, without writing.

On Application for Rehearing
THOMPSON, Presiding Judge.
On application for rehearing, Lawyers Title Insurance Corporation contends that Rodgetta Colvin Jett, by virtue of Mary Craig Bryant's January 9, 1995, will conveying her entire estate to Jett, obtained title to the property at issue in this case when Bryant died on March 14, 1995. In making this argument, Lawyers Title relies on Murphree v. Griffis, 215 Ala. 98, 109 So. 746 (1926), in which our supreme court held that title to land obtained by a beneficiary of a will vests at the time of the testator's death. But see Murphy v. Vaughan, 226 Ala. 461, 147 So. 404 (1933) (property vested in the beneficiary at the time the judgment confirming the probate of the will was entered); and Douglass v. *440 Jones, 628 So.2d 940, 941 (Ala.Civ.App. 1993) ("Beneficiaries under a will have no title until settlement and disbursement of the estate by the executors."). Lawyers Title has impermissibly raised this argument for the first time in its brief on application for rehearing.
"Our supreme court has stated:
"`"`We cannot sanction the practice of bringing up new questions for the first time in application for rehearing.' Kirkland v. Kirkland, 281 Ala. 42, 49, 198 So.2d 771, 777 (1967) (on application for rehearing). `We cannot sanction the practice of bringing up new questions for the first time in applications for rehearing.' Cole v. Cole Tomato Sales, Inc., 293 Ala. 731, 735, 310 So.2d 210, 212 (1975) (on application for rehearing). `New supporting arguments presented for the first time on rehearing generally will not be considered.' Stover v. Alabama Farm Bureau Ins. Co., 467 So.2d 251, 253 (Ala.1985) (on application for rehearing). `[T]his argument was raised for the first time on application for rehearing, and therefore will not be considered.' Schulte v. Smith, 708 So.2d 138, 141 n. 2 (Ala.1997) (on application for rehearing)."'
"Water Works & Sewer Bd. of Selma v. Randolph, 833 So.2d 604, 609 (Ala.2002) (opinion on application for rehearing)(quoting Ex parte Lovejoy, 790 So.2d 933, 938-39 (Ala.2000)) (emphasis added)."
Alexander v. State, 904 So.2d 1265, 1272 (Ala.Civ.App.2004). Accordingly, based on the foregoing authorities, this court may not now consider the argument Lawyers Title asserts for the first time on application for rehearing.
APPLICATION OVERRULED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.