On Second Application for Rehearing

PITTMAN, Judge.
This court’s opinion of March 9, 2012, is withdrawn, and the following is substituted therefor.
James M. Perry appeals from a summary judgment in favor of the Federal National Mortgage Association (“Fannie Mae”) in an ejectment action. We affirm.

Facts and Procedural History

Perry obtained a loan in the amount of $144,433 from RBMG, Inc., to purchase a home. On August 12, 2003, he executed a promissory note in favor of RBMG and a mortgage securing the note in favor of Mortgage Electronic Registrations Systems, Inc. (“MERS”), as nominee for the lender RBMG. The note and the mortgage were, at different times, subsequently transferred to EverHome Mortgage Company (“EverHome”). Perry made the payments due on the mortgage indebtedness until November 2007, when he was injured in a work-related accident. After the injury, Perry experienced a reduction in his income and began to have difficulty in making his mortgage payments.
In support of its summary-judgment motion, Fannie Mae submitted evidence indicating that on July 16, 2008, Ever-Home had sent a notice-of-default letter to Perry at the address listed on the note and the mortgage. In his response in opposition to the motion, Perry submitted an affidavit stating that he had contacted Ev-erHome in an effort to obtain a loan-modification or “work-out” plan through Ever-Home’s loss-mitigation program. Between July 23, 2008, and August 4, 2009, Ever-Home and Perry were in contact concerning loss-mitigation alternatives to foreclosure, and EverHome agreed to suspend Perry’s mortgage payments for three months, beginning August 1, 2008, and ending November 1, 2008. Perry, however, was never able to bring his loan to a current status, and EverHome declined to consider any further loss-mitigation measures because it concluded that Perry’s expenses exceeded his income.
On July 2, 2009, an attorney retained by EverHome notified Perry via a mailed letter that EverHome was accelerating the maturity date of the loan and commencing foreclosure proceedings, with a foreclosure sale scheduled for August 4, 2009. The letter enclosed a copy of the foreclosure notice to be published in the newspaper. The notice named EverHome as the as-signee of the mortgage.
It is undisputed that on July 6, 2009, EverHome conveyed its interest in the property to Fannie Mae by special warranty deed; that the notices of the foreclosure sale were published on July 8, July 15, and July 22, 2009, in the Shelby County Reporter; and that on July 15, 2009, MERS assigned the mortgage to EverHome. At *1093 the foreclosure sale on August 4, 2009, EverHome purchased the property for $137,896.50. The same day, EverHome’s attorney sent Perry a demand for possession of the property. On August 21, 2009, the assignment of the mortgage and the special warranty deed were both recorded in the Shelby County Probate Office; the deed was recorded two seconds after the assignment.
On August 17, 2009, Fannie Mae filed a complaint alleging that it was the owner of the property by virtue of its special warranty deed from EverHome and seeking to eject Perry from the property. Fannie Mae attached to the complaint Ever-Home’s foreclosure deed and its own special warranty deed. Perry answered and denied that Fannie Mae had the right to eject him from the property because, he claimed, the foreclosure sale and the foreclosure deed were void as a consequence of what, Perry claimed, had been “defective notice and a defective sale.”
Following discovery, Fannie Mae moved for a summary judgment. In support of that motion, Fannie Mae submitted the note, the mortgage, EverHome’s foreclosure deed, its own special warranty deed, and the affidavit of Nik Fox, custodian of EverHome’s books and records relating to Perry’s loan. Fox stated that he had reviewed EverHome’s records concerning Perry’s loan and that he had personal knowledge of the facts set forth in his affidavit. He authenticated the pertinent documents, including the series of loss-mitigation letters that EverHome had sent to Perry and the notice-of-acceleration and demand-for-possession letters that attorneys for EverHome had sent to Perry. With respect to the promissory note that Perry had executed in favor of RBMG on August 12, 2008, Fox authenticated Ever-Home’s copy of the note, which had been stamped with the following preprinted blank indorsement:
“Pay to The Order of
Without Recourse [illegible signature]
Senior Vice President RBMG, Inc.”
Fox averred that EverHome had “acquired its interest in the note on or about July 2, 2007.”
Perry filed a response in opposition to Fannie Mae’s summary-judgment motion, attaching, among other materials, his own affidavit and arguing that the foreclosure sale and the foreclosure deed were void for the following reasons: (1) EverHome did not have the right to exercise the power of sale under the mortgage because, Perry said, it was not the assignee of the mortgage when it commenced the foreclosure proceedings; (2) EverHome had failed to comply with the notice requirements in the mortgage instrument; (3) EverHome had failed to comply with the statutory notice requirements of § 35-10-13, Ala.Code 1975, because, Perry said, the first foreclosure notice published in the newspaper on July 8, 2009, reflected that the mortgage had been assigned to EverHome when, in fact, MERS did not assign the mortgage to EverHome until July 15, 2009; (4) Ever-Home had failed to comply with its loss-mitigation program; (5) the foreclosure sale was wrongful because EverHome had breached its fiduciary duty by intentionally underbidding the value of the property and creating a sham deficiency; and (6) Fannie Mae’s summary-judgment motion was not supported by admissible evidence under Rule 56, Ala. R. Civ. P. Specifically, Perry argued that Fox’s affidavit was not based on personal knowledge and failed to state how or when EverHome had obtained an interest in the note that Perry had executed in favor of RBMG.
*1094 Fannie Mae filed a reply to Perry’s response and moved to strike a portion of Perry’s affidavit. The trial court granted the motion to strike and entered a summary judgment in favor of Fannie Mae on August 24, 2010, setting out the reasons for its decision. Perry filed a motion to alter, amend, or vacate the judgment on September 22, 2010. The trial court denied Perry’s postjudgment motion on October 29, 2010, and Perry timely appealed on December 9, 2010. The supreme court subsequently transferred the appeal to this court pursuant to Ala.Code 1975, § 12-2-7(6).

Standard of Review

Appellate review of a summary judgment is de novo. Ex parte Ballew, 771 So.2d 1040 (Ala.2000). A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038 (footnote omitted). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d).
I. EverHome’s Right to Exercise the Power of Sale
A. Perry contends that the foreclosure sale was defective because Ever-Home was not the assignee of the mortgage when it initiated the foreclosure proceedings. A party “initiates” foreclosure proceedings when it accelerates the maturity date of the indebtedness and publishes notice of a foreclosure sale. See Sturdivant v. BAC Home Loans Servicing, LP, [Ms. 2100245, December 16, 2011] — So.3d -, - (Ala.Civ.App. 2011). On July 2, 2009, EverHome’s attorney notified Perry that EverHome was accelerating the maturity date of the indebtedness and initiating foreclosure proceedings; on July 8, 2009, Everhome first published notice of a foreclosure sale scheduled for August 4, 2009; on July 15, 2009, MERS assigned the mortgage to EverHome.
In Sturdivant, supra, a majority of this court held that, because the foreclosing entity was not the assignee of the mortgage when the foreclosure proceedings were initiated, the foreclosing entity had no authority to foreclose and no standing to prosecute its ejectment action. Unlike in Sturdivant, the timing of the assignment of the mortgage is not determinative in this case. In support of its summary-judgment motion, Fannie Mae submitted Fox’s affidavit testimony indicating that on July 2, 2007, two years before EverHome initiated the foreclosure proceedings, Ev-erHome had acquired the promissory note that Perry had executed in favor of RBMG in 2003. The parties do not dispute the fact that the note was a negotiable instrument, i.e., that it represented Perry’s unconditional promise to pay RBMG a fixed sum of money at a definite time, without requiring any other undertaking by Perry. See Ala.Code 1975, § 7-3-104. The parties also do not dispute that EverHome became, at some point, a “holder” of the note. A holder is entitled to enforce the terms of a negotiable instrument. Ala. Code 1975, § 7-3-301. The dispute con *1095 cerns when EverHome became a holder of the note. If EverHome became a holder of the note before it initiated the foreclosure proceedings in July 2009, then Ever-Home was authorized to exercise the power of sale contained in the mortgage by virtue of § 85-10-12, Ala.Code 1975.
Section 85-10-12 provides, in pertinent part, that
“[w]here a power to sell lands is given in any mortgage, the power is part of the security and may be executed by any person, or the personal representative of any person who, by assignment or otherwise, becomes entitled to the money thus secured.”
(Emphasis added.) In Harton v. Little, 176 Ala. 267, 270, 57 So. 851, 851 (1911), our supreme court held that “[i]t is not at all necessary that a mortgage deed be assigned in order to enable the owner of the debt to foreclose under a power of sale.”
“The power of sale is a part of the security, and may be exercised by an assignee, or any person who is entitled to the mortgage debt. And a transfer of the debt, by writing or by parol, is in equity an assignment of the mortgage.”
176 Ala. at 270, 57 So. at 851-52 (citations omitted). See also Ala.Code 1975, § 8-5-24 (“The transfer of a ... note given for the purchase money of lands, whether the transfer be by delivery merely or in writing, expressed to be with or without recourse on the transferor, passes to the transferee the hen of the vendor of the lands.”). See generally Restatement (Third) of Property: Mortgages § 5.4(a) (1997) (stating that “[a] transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise”).
Fox, the custodian of EverHome’s records relating to Perry’s loan, identified EverHome’s copy of the note, which bore a blank indorsement by RBMG. A blank indorsement allows a party to transfer a note merely by possession. See Ala.Code 1975, § 7-3-205(b) (“When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.”); see also § 7-3-201(b). Although the indorsement was undated, Fox averred that EverHome had “acquired its interest in the note on or about July 2, 2007.”
B. Perry argues that Fox’s statement regarding the date on which EverHome acquired the note was inadmissible under Rule 56(e), Ala. R. Civ. P. That rule provides, in pertinent part:
“Supporting and opposing affidavits shah be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.”
Fox’s affidavit stated, in part:
“In my present position, I have direct access to the books and records of [Ev-erHome] regarding the account which forms the basis of this action and am a custodian of said books and records. I have personal knowledge of the facts set forth in this affidavit and I have reviewed said relevant business books and records.... I am competent to testify to the matters set forth in this affidavit, which are based upon my review of said books and records and my personal knowledge.”
Perry maintains that Fox could not have had personal knowledge of the date on which possession of the note had been delivered to EverHome unless (a) Fox had *1096 been involved in the delivery “transaction” or (b) Fox had reviewed a record of Ever-Home documenting that “transaction.” With respect to alternative (b) of his lack-of-personal-knowledge argument, Perry insists that, if Fox had reviewed and relied upon a record of EverHome documenting the “transaction” by which EverHome had acquired the note, then that record should have been, but was not, attached to Fox’s affidavit.
Initially, we note that because a blank indorsement allows a party to transfer a note by possession alone, it is unlikely that any formal, documentable “delivery transaction” occurred. EverHome may, however, have made an entry in its files or on its books indicating that the note, a valuable financial asset, had been received and credited to its account on a certain date. Nevertheless, aside from Fox’s general assertion that he had reviewed EverHome’s books and records and that he had personal knowledge of the contents of those books and records, Fox did not state (and Fannie Mae did not attach documentation to demonstrate) how Fox had gained his knowledge of the date on which EverHome had acquired possession of the note.
Fannie Mae argues that Perry failed to preserve for review any argument as to a defect in Fox’s affidavit because Perry did not move to strike the affidavit. We agree. Although Perry called the trial court’s attention to the inadmissibility of Fox’s testimony regarding the alleged date on which EverHome had acquired the note and although Perry devoted a considerable portion of his response in opposition to Fannie Mae’s summary-judgment motion to explaining the basis for his objection, the Supreme Court of Alabama has recently made it clear that “a party must move the trial court to strike any evidence that •violates Rule 56(e), Ala. R. Civ. P. An objection to the inadmissible evidence alone is not sufficient.” Ex parte Secretary of Veterans Affairs, 92 So.3d 771, 777 (Ala.2012) (emphasis added; footnote omitted).
C. Citing Byrd v. MorEquity, Inc., 94 So.3d 378 (Ala.Civ.App.2012), Perry argues that Fannie Mae submitted contradictory evidence as to when EverHome became entitled to exercise the power of sale in the mortgage. Perry maintains that Fannie Mae’s own evidentiary submissions created a genuine issue of material fact regarding whether EverHome had the right to foreclose on Perry’s mortgage by virtue of EverHome’s physical possession of the note, a bearer instrument, on July 2, 2007, or by virtue of the assignment from MERS of the mortgage and note on July 15, 2009.
In Coleman v. BAC Servicing, [Ms. 2100453, June 22, 2012] - So.3d -, - (Ala.Civ.App.2012), this court addressed the same argument. We concluded that there was no conflict in the evidence, that Byrd v. MorEquity is distinguishable, and that reversal of a summary judgment in favor of the foreclosing entity was not required. The same is true in the present case.
Accordingly, the trial court properly considered Fannie Mae’s evidence that EverHome, at the time it initiated the foreclosure proceedings on July 2, 2009, was the holder of the note and was, therefore, entitled to exercise the power of sale in the mortgage; that EverHome perfected title on August 4, 2009, when it purchased the property at the foreclosure sale; and that the equitable doctrine of after-acquired title operated to perfect title in Fannie Mae immediately. See Jett v. Lawyers Title Insurance Corp., 985 So.2d 434 (Ala.Civ.App.2007):
‘““In no State perhaps has the rule been more rigidly adhered to than in *1097 this, ‘that when one sells land to which he has no right, with warranty of title, and he afterwards acquires a good title, it passes instantly to his vendee, and he is estopped from denying that he had no right at the time of the sale.’
985 So.2d at 438 (quoting Turner v. Lassiter, 484 So.2d 378, 380 (Ala.1985), quoting in turn Doolittle v. Robertson, 109 Ala. 412, 413, 19 So. 851, 851 (1895)).
II. Separation of the Note and the Mortgage
Perry contends that because the note and the mortgage were initially separated (with the note having been executed in favor of RBMG and the mortgage having been executed in favor of MERS, as nominee for RBMG), EverHome never had an enforceable lien. Fannie Mae maintains that Perry failed to raise that argument before the trial court. The record indicates that in his postjudgment motion Perry made a one-sentence argument, without citation to authority, that “[t]he plaintiff has no valid or enforceable lien because the note and mortgage were separated.” On appeal, Perry cites In re Agard, 444 B.R. 231, 246 (Bankr.E.D.N.Y.2011). This court has previously rejected the same argument in Coleman v. BAC Servicing, [Ms. 2100453, June 22, 2012] — So.3d -, - (Ala.Civ.App.2012).
III. Contractual and Statutory Notice Requirements
A. Perry contends that the foreclosure sale was defective because Ever-Home failed to comply with the notice requirements in the mortgage instrument. Specifically, Perry maintains that he was never notified that his loan had been transferred to EverHome as required, he said, by paragraph 20 of the mortgage. That argument is unavailing because paragraph 20 of the mortgage specifically states that “[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.”
Perry also contends that he was not given notice of “default prior to acceleration,” as required, he said, by paragraph 22 of the mortgage. That paragraph states:
“Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower’s breach of any covenant or agreement in this Security Instrument- The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale.”
Assuming, without deciding, that the assertion of such an alleged defect in the process leading up to foreclosure is available to Perry in an ejectment action brought by a party that was not the foreclosing entity but is a subsequent vendee of the foreclosure-sale purchaser, we note that the mortgage provides, in paragraph 15, that
“[a]ny notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower’s notice address if sent by other means.”
*1098 Fox identified a letter mailed by Ever-Home to Perry’s address on July 16, 2008, that stated:
‘TOUR DEFAULT IN PAYMENT OF THE CAPTIONED LOAN HAS MADE IT NECESSARY FOR us to consider taking legal action. In accordance with the terms of the Deed/Mortgage, you are hereby notified that you have thirty (30) days from the date of this letter to cure the existing default. If the breach of contract is not cured on or before the thirtieth day, we will declare the principal balance, $149,228.29, and all sums secured by the Deed/Mortgage due payable without further notice to you.
“If you wish to reinstate the account, you must send certified funds (cashiers check or money order) in the amount of $3,539.52. An additional monthly payment must be added to this amount on your next due date. If you send any amount less than the full reinstatement amount as quoted in this letter, we may elect to apply partial payment to your account without waiving our right of acceleration. In the event that the property is tenant-occupied and you fail to cure the breach as required by this letter, this is a formal demand for all rents, applicable to state statutes.
“If you are in need of financial advice, you may wish to contact a HUD approved housing counseling agency. These agencies provide experienced home ownership counseling at no charge to you. For the agency in your area call (809) 559-4287.
“This letter shall also serve as notice to you of your right to reinstate your loan after acceleration as provided by the Deed/Mortgage, and of your right to bring a court action to assert the nonexistence of the breach of contract or any other legal defense to acceleration or foreclosure. Under the terms of the Deed/Mortgage, we are entitled to collect all expenses allowed by law, which may include reasonable attorney fees and the related costs of any legal proceedings.
“Sincerely,
EverHome Mortgage Company
Collection Department”
Although Perry denied that he had received the letter, he did not dispute that EverHome had sent the letter. Perry, therefore, failed to establish the existence of a genuine issue of material fact regarding whether the default notice was sent. See Redman v. Federal Home Mortg. Corp., 765 So.2d 630, 634 (Ala.1999).
Perry also argues that he did not receive the notice-of-acceleration-and-foreclosure letter that Fox identified as having been sent to Perry on July 2, 2009, by an attorney for EverHome. That argument, however, was not presented to the trial court and cannot be raised for the first time on appeal. See White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1057 (Ala.2008).
B. Perry contends that the foreclosure sale was defective because Ever-Home failed to comply with the notice requirements in § 35-10-13, Ala.Code 1975. That section provides that “[t]he notice of [foreclosure] sale must give the time, place and terms of said sale, together with a description of the property.” (Emphasis added.)
Perry insists that the notice, which was first published on July 8, 2009, failed to comply with the statutory requirement to set out the “terms of [the] sale” because it incorrectly stated that the mortgage had been assigned to EverHome when, in fact, the assignment to EverHome did not occur until July 15, 2009. Perry argues that, because EverHome was not the assignee *1099 of the mortgage at the time the foreclosure proceedings were initiated, the foreclosure sale was null and void. He bases that argument on § 35-10-9, Ala.Code 1975, which provides:
“All sales of real estate, made under powers contained in mortgages or deeds of trust contrary to the provisions of this article, shall be null and void, notwithstanding any agreement or stipulation to the contrary.”
(Emphasis added.) As previously discussed, the fact that EverHome was not the assignee of the mortgage at the time foreclosure proceedings were initiated did not negate EverHome’s authority to foreclose. EverHome’s legal right to exercise the power of sale in the mortgage was not dependent upon its being the assignee of the mortgage, see Harton v. Little, supra. As the holder of the note, EverHome was the entity that was “entitled to the money ... secured” by the mortgage and thus the entity that was permitted to exercise the power of sale. § 35-10-12.
Alabama law is clear that errors in the notice that do not prejudice the mortgagor will not invalidate an otherwise valid foreclosure sale. See, e.g., Drake v. Rhodes, 155 Ala. 498, 46 So. 769 (1908) (transposition of mortgagor’s initials did not prejudice mortgagor); Richards v. Phillips, 925 So.2d 216 (Ala.Civ.App.2005) (inaccurate statement in preamble of notice that property was located in Shelby County did not prejudice mortgagor because legal description of property in notice accurately stated that property was located in Chilton County); and Farmers’ Sav. Bank v. Murphree, 200 Ala. 574, 76 So. 932 (1917) (failure to specify in notice that foreclosure sale would be for cash did not prejudice mortgagor because, although the sale was made for cash, an extension of credit to purchasers would tend to attract more bidders).
Granted, the inaccuracy in the notice here was more significant than the errors in the cases cited above. Nevertheless, there is nothing in the record to support the conclusion that Perry was harmed by the inaccuracy, and Perry neither alleged nor presented evidence indicating that he had suffered any actual prejudice as a consequence of the inaccuracy. Perry had been sending his mortgage payments to EverHome for a year before the notice was published, and he continued to correspond with EverHome about his loan up through and including the date of the foreclosure sale. Compare Kelly v. Carmichael, 217 Ala. 534, 537, 117 So. 67, 70 (1928) (noting that mortgagor’s right to pay mortgage indebtedness at any time before foreclosure sale would be compromised if mortgagor was unaware of the entity to whom the debt was owed).
IV. Loss Mitigation
A. Perry contends that Ever-Home misrepresented to him that the foreclosure would not take place so long as EverHome was working with him in its loss-mitigation program. Perry’s affidavit stated:
“I spoke to the mortgage company numerous times about a loan-modification or work-out plan through their loss-mitigation program. They told me they would work with me but they did not follow through because they sold the loan to another mortgage company. My mortgage was transferred several times during this time frame and I could never get anyone to follow up with the modification. I sent all the requested information to them; however I never heard from them. I was told by them that the foreclosure would not go forward as long as they were working with me through the loss-mitigation program. Because of these communications with the lender, I was confused about the *1100 foreclosure procedure. Further, I relied upon these communications and believed that the mortgage company was working with me to help me keep my home. They did not follow up and failed to work with me through the loss-mitigation program.”
(Emphasis added.) Fannie Mae moved to strike the emphasized portion of Perry’s affidavit on the grounds that it was hearsay and that it violated the Statute of Frauds. The trial court correctly granted that motion.
In support of its summary-judgment motion, Fannie Mae submitted a series of letters from EverHome to Perry regarding Perry’s requests to be considered for the loss-mitigation program. In each of those letters, EverHome cautioned Perry that, during the loss-mitigation process, it would not “stop normal default-servicing efforts, up to and including foreclosure.” Perry did not deny having received the letters and did not submit any evidence indicating that EverHome had agreed, in a writing, to forbear collection efforts or to postpone the foreclosure proceedings. In addressing an identical argument in Coleman v. BAC Servicing, [Ms. 2100453, June 22, 2012] — So.3d -, - (Ala.Civ.App.2012), this court stated:
“Assuming that a [foreclosing entity] had made the oral representation that [the mortgagor in default] alleged, that representation would have been unenforceable under the Statute of Frauds. Section 8-9-2(7), Ala.Code 1975, provides:
“ ‘In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
[[Image here]]
‘“(7) Every agreement or commitment to lend money, delay or forbear repayment thereof or to modify the provisions of such an agreement or commitment except for consumer loans with a principal amount financed less than $25,000.’
“(Emphasis added.) See DeVenney v. Hill, 918 So.2d 106 (Ala.2005) (holding that agreement whereby seller of land would forbear collecting $150,000 of purchase price for 30 days in return for additional $50,000 from buyer was void because it was not in writing). In Holman v. Childersburg Bancorporation, Inc., 852 So.2d 691 (Ala.2002), our supreme court held that when a tort claim turns on an alleged agreement that is unenforceable under the Statute of Frauds, the Statute of Frauds also bars proof of that agreement to support the tort claim. The court explained that to allow the tort claim would defeat the purpose of the Statute of Frauds. Likewise, we conclude that to allow a defective-foreclosure defense that is predicated upon an alleged agreement that is unenforceable under the Statute of Frauds would also defeat the purpose of the Statute of Frauds.”
— So.3d at-.
B. In his appellate brief, Perry argues that a foreclosing entity is required, by the National Housing Act, specifically, 12 U.S.C. § 1701-x(c)(5) (effective July 30, 2008) (“the Act”), and by regulations promulgated by the Department of Housing and Urban Development (“HUD”), to offer loss-mitigation alternatives to foreclosure for mortgagors who are in default and that the failure to comply with the Act and the regulations “renders the foreclosure premature ... wrongful and actionable.” In its appellate brief, Fannie Mae asserts that Perry did not *1101 present that particular argument to the trial court — apparently referring only to Perry’s reliance on the Act, and not to his reliance on the regulations, because Fannie Mae further argues:
“Perry’s argument that [Fannie Mae] failed to demonstrate that EverHome complied with various federal regulations is without merit. Perry cites to no authority that a failure to comply with those regulations, even if proven, would serve as a basis to set aside the foreclosure and divest a third-party purchaser of that property of its title to the property. Furthermore, Alabama law does not require an ejectment plaintiff to prove that the foreclosing entity complied with servicing regulations.”
In his reply brief, Perry maintains that “the issue was extensively argued at the summary-judgment hearing, and the trial court was apprised of the regulations requiring loss-mitigation in this case.” The trial court’s judgment indicates that Perry raised the issue, at least to some extent, because the judgment states:
“There is no requirement in the mortgage documents for EverHome to engage in loss-mitigation programs with Perry. Therefore, any engagement in loss-mitigation efforts by EverHome was entirely voluntary and any compliance or non-compliance with a loss-mitigation program cannot serve as a basis for voiding the foreclosure sale.”
Assuming that Perry generally apprised the trial court of a regulatory requirement calling for loss mitigation as an alternative to foreclosure, any argument that Ever-Home’s alleged failure to comply with such requirement constitutes a defense to an ejectment proceeding following a nonjudicial foreclosure is precluded by our decision in Coleman v. BAG Servicing, [Ms. 2100453, June 22, 2012] - So.3d -, -(Ala.Civ.App.2012). In Coleman, we stated that “[i]n the absence of a statute or controlling authority from our supreme court to the contrary, we conclude that the failure of a foreclosing entity to comply with HUD or VA loss-mitigation requirements may not be raised as a defense to an ejectment action following a nonjudicial foreclosure.” — So.3d at-.
V. The Foreclosure Sale Price
Perry maintains that the foreclosure sale was defective because, he says, Ever-Home breached its fiduciary duty by intentionally underbidding the value of the property and creating a sham deficiency. In his affidavit, Perry asserted that the fair market value of the property was, according to the tax assessor’s records, $165,000 — approximately the same, Perry said, as the $170,743.67 indebtedness on the property at the time of the foreclosure sale — yet EverHome bought the property for only $137,896.50.
The trial court properly granted Fannie Mae’s motion to strike that portion of Perry’s affidavit.
“ ‘ “[Generally the tax assessing authority’s evaluation is not relevant when offered to prove market value. The rationale underlying this general exclusionary rule is that ‘it is notorious that properties are not assessed at anything like true value or market value.’ ” ’ Presley v. B.I.C. Constr., Inc., 64 So.3d 610, 621 (Ala.Civ.App.2009) (quoting 2 Charles W. Gamble, McElroy’s Alabama Evidence § 267.04 (5th ed.1996)). Moreover, [Perry] did not authenticate the ... tax notice as required by Rule 56(e), Ala. R. Civ. P. See Berry Mountain Mining Co. v. American Res. Ins. Co., 541 So.2d 4, 4-5 (Ala.1989).”
Berry v. Deutsche Bank Nat’l Trust Co., 57 So.3d 142, 148 (Ala.Civ.App.2010).
*1102 Moreover, the bid price for the property amounted to almost 84% of what, Perry claimed, was the market value of the property. “ ‘ “The general rule is that, ‘where the price realized at the [foreclosure] sale is so inadequate as to shock the conscience, it may itself raise a presumption of fraud, trickery, unfairness, or culpable mismanagement, and therefore be sufficient ground for setting the sale aside.’ ” ’ ” Mt. Carmel Estates, Inc. v. Regions Bank, 853 So.2d 160, 168 (Ala.2002) (quoting Breen v. Baldwin Cnty. Fed. Sav. Bank, 567 So.2d 1329, 1333 (Ala.1990), quoting in turn Hayden v. Smith, 216 Ala. 428, 430-31, 113 So. 293, 295 (1927)). We conclude that the price realized at the foreclosure sale was not so low as to shock the conscience. Cf. Mt. Car-mel Estates, supra (holding that bank’s foreclosure-sale bid, which was 81% of appraised value, was not so low as to shock the conscience).

Conclusion

Fannie Mae established its right to eject Perry from the property; therefore, the trial court’s judgment is due to be affirmed.
APPLICATION GRANTED; OPINION OF MARCH 9, 2012, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
BRYAN, THOMAS, and MOORE, JJ, concur.
THOMPSON, P.J., concurs in the result, without writing.