833 So.2d 604 (2002)
The WATER WORKS AND SEWER BOARD OF the CITY OF SELMA et al.
v.
Samuel L. RANDOLPH.
1002182.
Supreme Court of Alabama.
February 1, 2002.
Opinion Overruling Rehearing April 19, 2002.
*605 J. Garrison Thompson, Selma; and Philip Henry Pitts and Rickman E. Williams III of Pitts & Pitts, Selma, for appellants.
Collins Pettaway, Jr., of Chestnut, Sanders, Sanders, Pettaway, Campbell & Albright, P.C., Selma, for appellee.
Robert E. Sasser, Tamara A. Stidham, and Charlanna W. Spencer of Sasser, Littleton & Stidham, P.C., Montgomery, for amicus curiae Alabama Water and Wastewater Institute, in support of the appellant.
LYONS, Justice.
The Water Works and Sewer Board of the City of Selma ("the Board"); Board members William K. Hicks, J. Marvin Melton, Glen Sexton, and Bennie L. Tucker; and attorneys Phillip Henry Pitts and John Kelly III appeal from a judgment entered against them in an action filed by Board member Samuel L. Randolph. We reverse and render a judgment for them.
The Board was incorporated in 1966 pursuant to what is now codified as § 11-50-310 et seq., Ala.Code 1975. Pursuant to § 11-43-80, Ala.Code 1975, the governing body of a municipal water system may require the mayor of a municipality to act as superintendent of the system and, if it so chooses, the governing body "may, at any time it deems best, dispense with the mayor's service as superintendent." § 11-43-80(c).
James E. Perkins, Jr., mayor of the City of Selma, was appointed superintendent of the water works and sewer system for the City of Selma ("the system") at a regular meeting of the Board on October 4, 2000. On Friday, November 17, 2000, Mayor Perkins came to the Board's office accompanied by two bodyguards and two members of the city council. Perkins informed Hicks, the Board's chairman, and Melton, the Board's secretary, that he was taking over the Board, locking the water works building, and changing the security system. The locks and security system were subsequently changed.
Hicks and Melton sought legal advice. Board members Hicks, Melton, Tucker, and Sexton, and two attorneys, Pitts and Kelly, met on Sunday, November 19, 2000. Randolph, the only other Board member, did not attend the meeting. Hicks contends that he attempted to contact Randolph before the meeting, but that Randolph did not return his calls. Randolph acknowledges that he was aware that the group was meeting, but he contends that he could not get into the building where the meeting was being conducted, although there is no evidence indicating that he was refused admission.
According to the participants in the meeting, no vote was taken at the meeting as to whether to dismiss the mayor as superintendent, nor was there any discussion as to whether to retain the mayor as superintendent. According to Randolph, he went to Tucker's house later in the evening on November 19. Randolph testified that Tucker told him that there had been a meeting, but that when he asked Tucker what was discussed at the meeting, Tucker said, "I can't tell you. It's a secret. You'll find out in the morning." On the following morning, Monday, November 20, 2000, Hicks contacted Board counsel and requested that counsel draft a resolution to be adopted by the Board dismissing the mayor as superintendent of the system. At the regularly scheduled Board *606 meeting on November 20, 2000, copies of the resolution were distributed and, by a vote of 4 to 1, Mayor Perkins was dismissed as superintendent. Randolph cast the lone dissenting vote.
Also on November 20, 2000, Hicks and others filed an action against Mayor Perkins seeking a declaratory judgment as to the authority of the Board to dismiss the mayor as superintendent. Two days later, on November 22, 2000, Randolph filed an action against the Board, the four other members of the Board (Hicks, Melton, Sexton, and Tucker), and attorneys Pitts and Kelly, alleging that the defendants had held a secret meeting of the Board without notice to the public or to him, in violation of § 13A-14-2, known as "the Sunshine Law." Randolph's complaint further alleged that Mayor Perkins actually had been terminated at the Sunday night meeting, sought a judgment declaring void the actions of the defendants terminating Mayor Perkins as superintendent of the system, and requested an award of attorney fees.
The trial court issued an ex parte temporary restraining order blocking the defendants from enforcing the decision to terminate the mayor as superintendent of the system. Subsequent proceedings in Randolph's action, during which the restraining order remained in effect, included a challenge by the defendants to the authority of the court to issue the restraining order on the ground that the pending action filed by Hicks and others deprived the trial court of jurisdiction to hear the case and on the ground that the Sunshine Law did not apply to the Board; an amended complaint filed by Randolph seeking a judgment declaring that the action taken by the defendants was a constitutional nullity; an attempt by the trial court to obtain resolution of the dispute through mediation; and, after hearing evidence described by the trial court as "partial testimony," the entry of a "Final Order" on January 16, 2001. In that order the trial court held that the Board was subject to the Sunshine Law, that the Sunday night meeting violated the Sunshine Law, and that therefore the actions taken at that meeting were void. The court also permanently enjoined the defendants from engaging in future secret or illegal meetings.
The defendants filed posttrial motions that led to the admission of additional evidence by the defendants. On May 11, 2001, the trial court entered a judgment in which it denied the defendants' motion for a new trial or to alter, amend, or vacate the "Final Order"; held that the defendants' jurisdictional arguments were without merit; affirmed its previous finding regarding the applicability of the Sunshine Law; and awarded Randolph attorney fees in the amount of $16,275, plus costs.
The Board and the Board-member defendants (hereinafter collectively referred to as "the Board") raise several issues on appeal. The Board asserts 1) that the trial court lacked jurisdiction to hear Randolph's action because when that action was filed the prior declaratory-judgment action filed by Hicks and others was pending, 2) that the Sunshine Law does not apply to the Water Works and Sewer Board of the City of Selma, 3) that exceptions to the Sunshine Law dealing with the rendition of legal advice or the discussion of character or good name prevent the Sunshine Law from being applicable to the Sunday night meeting, 4) that the subsequent action of the Board at a public meeting should have been recognized as a basis for discharging the mayor as superintendent of the system, notwithstanding what might have transpired at the Sunday night meeting, and 5) that the award of attorney fees was inappropriate.

The Sunshine Law provides:

*607 "(a) No executive or secret session shall be held by any of the following named boards, commissions or courts of Alabama, namely: Alabama Public Service Commission; school commissions of Alabama; board of adjustment; state or county tax commissions; any county commission, any city commission or municipal council; or any other body, board or commission in the state charged with the duty of disbursing any funds belonging to the state, county or municipality, or board, body or commission to which is delegated any legislative or judicial function; except, that executive or secret sessions may be held by any of the above named boards or commissions when the character or good name of a woman or man is involved."
(Emphasis added.) Most of the previous cases that this Court has decided involving the Sunshine Law have dealt with entities expressly listed in the Sunshine Law. See, e.g., Slawson v. Alabama Forestry Comm'n, 631 So.2d 953 (Ala.1994) (Alabama Forestry Commission); Dunn v. Alabama State Univ. Bd. of Trustees, 628 So.2d 519 (Ala.1993), overruled on other grounds, Watkins v. Board of Trustees of Alabama State Univ., 703 So.2d 335 (Ala. 1997) (state university board of trustees); Gray v. Birmingham Bd. of Educ., 641 So.2d 279 (Ala.Civ.App.1993) (board of education); Kucik v. Opelika City Bd. of Educ., 454 So.2d 967 (Ala. 1984) (board of education); Ex parte Alabama Pub. Serv. Comm'n, 376 So.2d 665 (Ala.1979) (Alabama Public Service Commission); and Miglionico v. Birmingham News Co., 378 So.2d 677 (Ala.1979) (a city council).
Cases involving entities not specifically listed in the statute include City of Wetumpka v. Central Elmore Water Authority, 703 So.2d 907 (Ala.1997) (involving a water authority but not reaching the issue of the applicability of the Sunshine Law to the authority); and Advertiser Co. v. Wallis, 493 So.2d 1365 (Ala.1986) (holding that the Department of Mental Health and Mental Retardation and the Alabama Medicaid Agency were not "boards" for purpose of the Sunshine Law). A reading of the statute discloses that neither "public corporation" nor "water board" is expressly listed as a body subject to the Sunshine Law. Whether the Sunshine Law is applicable to water boards incorporated as public corporations pursuant to § 11-50-310 et seq. appears to be a question of first impression.
In interpreting a statute, this Court must ascertain and effectuate the intent of the Legislature as expressed by the statute. Employees' Retirement Sys. of Alabama v. Head, 369 So.2d 1227 (Ala. 1979). When determining legislative intent from the language used in a statute, a court may explain the language, but it may not detract from or add to the statute. Siegelman v. Chase Manhattan Bank (USA), Nat'l Ass'n, 575 So.2d 1041, 1045 (Ala.1991). When the language is clear, there is no room for judicial construction. Employees' Retirement System, 369 So.2d at 1228.
Because neither a public corporation nor a water board is expressly enumerated as a body subject to the prohibitions of the Sunshine Law, we must interpret the meaning of the catchall phrases, "any other body, board or commission in the state charged with the duty of disbursing any funds belonging to the state, county or municipality," or "board, body or commission to which is delegated any legislative or judicial function." § 13A-14-2(a).
Randolph relies upon Hicks's testimony, in which he described the Board as a utility receiving and disbursing "public grants"; providing water, sewer, and garbage services and collecting fees from the public for those services; and receiving *608 and disbursing public funds. The burden rested upon Randolph to prove the basic fact of his case, namely, that the conduct complained of took place under circumstances that brought him within the protective purview of the statute under which he claims relief. Daughtry v. Western Ry. of Alabama, 341 So.2d 702, 706 (Ala.1977). In order to establish the applicability of the Sunshine Law, Randolph had the burden of proving that public funds or grants received or disbursed by the Board were "funds belonging to the state, county or municipality" (§ 13A-14-2(a)); this he failed to do. Section 11-50-314, the statutory basis for the creation of the Board, contemplates that the monies used by such a public corporation in the operation of its business shall come from the revenues generated by the operations of its system and through the borrowing of money. Such a public corporation is authorized to issue bonds to generate revenue, and the contemplated use of such funds is for the operation of the system. § 11-50-314(a)(5) and §§ 11-50-316 through -318. Nowhere in that statute is the public corporation authorized to disburse state, county, or municipal funds. The fact that the customers of the system operated by the public corporation also are residents of the municipality does not convert the revenue received from those customers into municipal funds.
The applicability of the remaining catchall phrase, "board, body or commission to which is delegated any legislative or judicial function" (§ 13A-14-2(a)), is equally unsupported by this record. Randolph does not contend that this phrase is applicable. No basis exists in § 11-50-310 et seq., the statutory basis for the existence of the Board, upon which to conclude that the Board exercises delegated legislative or judicial functions.
We conclude that the Sunshine Law does not apply to a public corporation organized under § 11-50-310 et seq., such as the Water Works and Sewer Board of the City of Selma. We therefore pretermit consideration of all other issues.
We reverse the judgment of the trial court, including the award of attorney fees, and render a judgment in favor of the Board.
REVERSED AND JUDGMENT RENDERED.
MOORE, C.J., and HOUSTON, JOHNSTONE, and WOODALL, JJ., concur.

On Application for Rehearing
LYONS, Justice.
On rehearing, Randolph challenges our statement in our opinion on original submission that he did not contend on appeal that the second catchall phrase in § 13A-14-2(a), Ala.Code 1975"board, body or commission to which is delegated any legislative or judicial function"is applicable. Although he quoted from the statute in his initial brief and emphasized certain words in the quoted portion by using bold type, he made no argument concerning the applicability of that portion of the statute to the facts of this case. Nor do we find in that brief any citations to authority as to that issue. Rule 28(a)(5), Ala. R.App. P, when read in conjunction with Rule 28(b), requires the appellee's brief to contain contentions with respect to the issues presented and the reasons for those contentions with citations to authorities, statutes, and parts of the record. Merely quoting a statute and emphasizing certain parts with bold type does not constitute a properly stated and supported contention.
Randolph, for the first time in this proceeding, argues in his rehearing application that the second catchall phrase is applicable to the Board. He cites two cases he says support his argument. The well-settled rule of this Court precludes consideration of arguments made for the first time on rehearing. See Ex parte Lovejoy, 790 So.2d 933, 938-39 (Ala.2000), where this Court stated:

*609 "Vesta raises for the first time in its application for rehearing the argument that it is a third-party beneficiary of the retail installment contract between Lovejoy and Allen Motor Company. `We can not sanction the practice of bringing up new questions for the first time, in an ex parte application for rehearing.' Robinson v. Allison, 97 Ala. 596, 604, 12 So. 604 (1893) (on application for rehearing). `We cannot sanction the practice of bringing up new questions for the first time in application for rehearing.' Kirkland v. Kirkland, 281 Ala. 42, 49, 198 So.2d 771, 777 (1967) (on application for rehearing). `We cannot sanction the practice of bringing up new questions for the first time in applications for rehearing.' Cole v. Cole Tomato Sales, Inc., 293 Ala. 731, 735, 310 So.2d 210, 212 (1975) (on application for rehearing). `New supporting arguments presented for the first time on rehearing generally will not be considered.' Stover v. Alabama Farm Bureau Ins. Co., 467 So.2d 251, 253 (Ala.1985) (on application for rehearing). `[T]his argument was raised for the first time on application for rehearing, and therefore will not be considered.' Schulte v. Smith, 708 So.2d 138, 141 n. 2 (Ala.1997) (on application for rehearing)."
We are constrained to deny the application. The question of the effect of the portion of the statute on which Randolph relies for the first time on application for rehearing on entities such as The Water Works and Sewer Board of the City of Selma will have to await another day.
APPLICATION OVERRULED.
MOORE, C.J., and HOUSTON, JOHNSTONE, and WOODALL, JJ., concur.