On Application for Rehearing

JOINER, Judge.
On March 29, 2013, this Court affirmed in part the Geneva Circuit Court’s denial of James Donald Yeomans’s Rule 32, Ala. R.Crim. P., petition, affirming the disposition of all the claims Yeomans raised in that petition except for a juror-misconduct claim. See Yeomans v. State, 195 So.3d 1018 (Ala.Crim.App.2013). With regard to the juror-misconduct claim, we remanded the case to the circuit court for it to comply with Rule 32.9(a), Ala. R.Crim. P., and hold an evidentiary hearing or take evidence by one of the means listed in Rule 32.9(a). Following an evidentiary hearing, the circuit court denied relief on the juror-misconduct claim. On June 13, 2014, this Court affirmed the judgment of the circuit *1065 court. Yeomans, 195 So.3d at 1064 (opinion on return to remand).
Yeomans has filed an application for rehearing and a brief in support of that application. See Rule 40, Ala. R.App. P. In those rehearing materials, Yeomans has not demonstrated that this Court’s decision was incorrect or that he otherwise is entitled to relief, and, with one exception, the issues Yeomans raises in his application warrant no additional discussion.
In our original consideration of Yeo-mans’s appeal of the dismissal of his Rule 32 petition we rejected Yeomans’s Rule 32 claims that were based on Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Yeomans’s claims in this regard were twofold: First, he claimed that he is mentally retarded and that, therefore, his death sentence is unconstitutional under Atkins; second, he claimed that his trial counsel was ineffective for not demonstrating that Yeomans is mentally retarded. As to the first claim— that Yeomans is mentally retarded — we specifically upheld the circuit court’s determination that the claim was procedurally barred under Rule 32.2(a)(4), Ala; R.Crim. P., because Yeomans had raised the claim on direct appeal and this Court had addressed it on the merits.[1]
As to the second claim — that his trial counsel, for various reasons, was ineffective for not demonstrating that Yeomans is mentally retarded — we also affirmed the trial court’s summary dismissal of the claim. Among othér things, we noted that Yeomans’s counsel at trial had decided not to argue that Yeomans was mentally retarded. In examining this issue, we quoted extensively from Yeomans v. State, 898 So.2d 878 (Ala.Crim.App.2004), in which this Court addressed Yeomans’s claims on direct appeal, including his claim that he was mentally retarded and could not be sentenced to death.’ After quoting extensively from the 2004 Yeomans opinion, we stated in our March 29, 2013, decision:
“As our opinion in Yeomans [v. State, 898 So.2d 878 (Ala.Crim.App.2004),] makes clear, the trial court had before it significant evidence regarding Yeo-mans’s level of intellectual functioning; that evidence included expert testimony and substantial documentary evidence regarding Yeomans’s intelligence. Further, as our opinion indicates, trial counsel ultimately did not argue that Yeo-mans was mentally, retarded; rather, counsel made the decision to argue as a mitigating circumstance that Yeomans had a low level of intellectual functioning. This Court, when viewing the considerable evidence regarding Yeomans’s level of intellectual functioning, was ‘convinced that Yeomans is not mentally retarded.’ 898 So.2d at 902. We cannot say, in reviewing this evidence again, that trial counsel’s decision not to argue that Yeomans was mentally retarded was an unreasonable one.”
Yeomans, 195 So.3d at 1041.
In his rehearing materials, Yeo-mans asserts:
“[This] Court profoundly misunderstood the evidence it cited, which uniformly supports a finding of adaptive functioning’’deficits and mental retardation. Mr." Yeomans’s earliest records (from age 7, around second grade) indi *1066 cate a raw IQ score of 67 (an adjusted IQ of 59-69) and his ‘failure in schoolwork.’ (C. 157; pp. 3, above.) The cited ‘second grade report card’ (C. 196) does not refute that score because it is not from second grade, but from the-1975/1976 school year, when Mr. Yeo-mans was 12 or 13 years old (Id.) Although most children that age are in 7th grade, Mr. Yeomans’s teacher noted that he was working at a second-grade level and that his ‘grade’ was ‘SPE’ .(special education). (Id.) Mr. Yeomans’s records and the trial testimony further indicate, contrary to the Court’s finding, that Mr. Yeomans was placed ‘in special education classes’ for the ‘educably mentally retarded’ straight through 11th grade, when he dropped out of school. (C. 178; T. 685-87, 691.) The ‘A’s and B’s’ the Court noted were received based on that ‘modified curriculum,’ as opposed to classes for ‘a normal child.’ (T. 686-87.)”
(Yeomans’s brief in support of reh’g, pp. 59-60 (emphasis in original).) Although Yeomans asserts that “this Court profoundly misunderstood the evidence” of intellectual functioning, the factual description he is challenging — the “second grade report card” — was made by this Court in its 2004 opinion in Yeomans’s direct appeal; our 2013 opinion addressing Yeo-mans’s Rule 32 petition quoted that description.
As far as we can determine, the only time Yeomans has ever challenged this Court’s 2004 description, of the report card is in his rehearing application in this case.[2] As the Alabama Supreme Court has often stated: “The well-settled rule of this Court precludes consideration of arguments made for the first time on rehearing.” Water Works & Sewer Bd. of Selma v. Randolph, 833 So.2d 604, 608 (Ala.2002). This rule would seem to apply with even more force to a defendant who waits until the rehearing application in his Rule 32 proceedings to object to a factual description made in the opinion in the direct appeal of his convictions and sentence.
We have, however, reexamined the record in Yeomans’s direct appeal, and it appears that, with regard to the “second-grade report card” mentioned in the relevant portion of this Court’s 2004 opinion on direct appeal, that report card includes the designation “SPE,” states that Yeomans “works on 2nd gr. level,” and is in fact from the 1975/76 school year when Yeomans would have been 12 or 13 years old. Thus, this Court’s description of that report card in 2004 appears to have been erroneous.
Even so, the 2004 erroneous description of Yeomans’s report card does not change our conclusion. This Court’s conclusion in its 2004 opinion regarding Yeomans’s alleged mental retardation did not turn on the report card at issue. Other evidence this Court considered included (1) IQ tests administered to Yeomans at age 7 (IQ of 67), age 9 (IQ of 83), age 11 (IQ of 78), and age 17 (IQ of 72); (2) evidence regarding Yeomans’s employment and family life as an adult; (3) evidence of Yeomans’s upbringing; (4) evidence from the psychologist and certified forensic examiner who conducted the court-ordered evaluation of Yeomans; (5) evidence that ‘Yeomans was placed in special-education classes throughout much of his academic career”; *1067 and (6) evidence from Yeomans’s younger sister “that Yeomans had a low I.Q. and that he could not read or write.” Yeomans, 898 So.2d at 900-02. As stated in our 2013 opinion: “We cannot say, in reviewing [the considerable evidence regarding Yeomans’s level of intellectual functioning] again, that trial counsel’s decision not to argue that Yeomans was mentally retarded was an unreasonable one.” Yeomans, 195 So.3d at 1041.
Accordingly, Yebmans’s application for rehearing is overruled.
APPLICATION OVERRULED.
WINDOM, P.J., and WELCH, KELLUM, and BURKE, JJ., concur.

. As noted in our March 29, 2013, opinion,
“Atkins [v. Virginia, 536 U.S. 304 (2002),] was decided on June 20, 2002, after Yeoman’s conviction and sentence in 2001 but while his appeal was pending in this Court. On July 3, 2002, Yeomans filed an amended and substituted brief in which he argued that Atkins applied to his case. This Court reviewed the record and decided this issue on the merits.”
Yeomans, 195 So.3d at 1047-48.

. Yeomans did not, for example, dispute the matter in his rehearing application filed in 2004. ■ Indeed, Yeomans's "statement of the facts” in his 2004 rehearing application stated simply that ‘‘[t]he facts of this case are sufficiently set forth in Appellant’s original brief, the State of Alabama’s brief and the opinion of this Honorable Court dated February 27, 2004.” (Yeomans’s July 20, 2004, reh’g application, p, 4.)