[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13548

_____

MICHAEL DAVID CARRUTH,

Petitioner-Appellant,

*versus*

COMMISSIONER, ALABAMA DEPARTMENT OF
CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:14-cv-01107-WKW-SMD

_____

Before WILSON, JILL PRYOR, and BRANCH, Circuit Judges.

WILSON, Circuit Judge:

Michael David Carruth was convicted by an Alabama jury on four counts of first-degree murder, one count of attempted murder, one count of first-degree burglary, and one count of first-degree robbery.[1] On December 3, 2003, he was sentenced to death.

Carruth appeals the district court's denial of his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. The district judge granted a Certificate of Appealability (COA) on six issues:

1. Whether trial counsel were ineffective in failing to investigate and present mitigating evidence in the penalty phase;

2. Whether the issue concerning trial counsel's failure to present mitigating evidence in the penalty phase is procedurally barred;

3. Whether appellate counsel was ineffective in failing to notify Carruth that the Alabama Court of Criminal Appeals (ACCA) had overruled an application for rehearing and to advise Carruth of further available appellate proceedings;

4. Whether the issue concerning appellate counsel's failure to notify Carruth that the ACCA had overruled an application for rehearing and to advise Carruth of further available appellate options is procedurally barred;

---

[1] The first-degree burglary and robbery counts were later vacated by the Alabama Court of Criminal Appeals on direct appeal on double jeopardy grounds. *Carruth v. State*, 927 So. 2d 866, 878, 880 (Ala. Crim. App. 2005).

5. Whether appellate counsel was ineffective in failing to argue that the prosecution engaged in prosecutorial misconduct in the guilt/innocence closing argument by telling the jury that the punishments of life without the possibility of parole or death were the punishment options and that anything else did not have those options; and

6. Whether Carruth was deprived of his right to an impartial jury and due process of law guaranteed him by the Sixth and Fourteenth Amendments to the United States Constitution by premature jury deliberations.

After thorough examination of all issues, and with the benefit of oral argument, we affirm.

## I.    Background

We first discuss the factual background underlying this case. Then, we separately discuss the complicated procedural history that led to this appeal.

### A. Factual Background

In 2002, Carruth and his accomplice, Jimmy Lee Brooks Jr., drove to the home of Forrest "Butch" Bowyer and his twelve-year-old son, William Brett Bowyer in Phenix City, Alabama. Carruth and Brooks handcuffed Butch and Brett and transported them to an empty construction site, hoping to extort thousands of dollars from Butch. Butch agreed to give them money from a box in his home closet, and all parties went back to the house to retrieve the money. Apparently, Carruth was irritated by the sum of money, and all parties went back to the construction site. Carruth then slit Butch's throat, sat on his back, and told him to "be quiet and go to

sleep." Carruth and Brooks dug a shallow grave, and Carruth told Brooks, "I've done one, now you do one." Brooks then shot Brett, who fell into the grave. Brooks proceeded to shoot Brett twice more, murdering him. Butch, still alive, played dead while Carruth and Brooks tossed Butch's body on top of Brett's and covered the grave. When Butch knew Carruth and Brooks had gone, he dug his way out, signaled a passing driver for help, and the driver called 911. Butch's testimony and accompanying evidence pointed to Carruth, who was subsequently indicted on four counts of capital murder.[2]

In May 2002, the court appointed two attorneys—Robert Lane and Jeremy Armstrong—to defend Carruth. Carruth pled not guilty, and the case proceeded to a three-day trial. During the prosecution's closing argument, the prosecutor stated to the jury that the capital murder counts carry sentences of death or life without parole. His full statement was as follows:

> I'm going to ask you to convict this man of those capital counts, the only punishments for which are life without parole or the death penalty, something that you're not even considering now, but if you convict him of those capital counts, we'll get to that phase

---

[2] One count because the murder was committed during a kidnapping; one count because the murder was committed during a robbery; one count because the murder was committed during a burglary; and one count because the murder victim was less than fourteen years of age, in violation of sections of Ala. Code § 13A-5-40(a)(1), (a)(2), (a)(4), and (a)(15).

later. Any other charge other than those four capital counts does not carry that punishment.

Defense counsel objected to this statement, to which the judge replied: "Noted." Carruth was found guilty on all counts.

The penalty phase began the following day. Carruth's counsel received funds for a psychologist, which they ultimately did not hire, and an investigator, but were denied funds for a polling expert. Carruth's counsel did not request funds for a mitigation expert. Armstrong later testified at the Rule 32 evidentiary hearing that *Wiggins v. Smith*[3] was published three months prior to trial, and he was not aware of *Wiggins* during Carruth's case.

Regarding mitigation efforts with his counsel, Carruth stated that he did not want his family involved, he had a great childhood, and there was "nothing there" to help with mitigation. Accordingly, his counsel did not seek mental health records but did arrange for three family members to provide character evidence. Due to the family members' indicated cooperation, counsel did not subpoena them to appear at the penalty phase. However, at the last minute, family members refused to show up because they wanted to avoid the "media circus" of the trial. Consequently, Carruth's counsel offered no witnesses or evidence during the penalty phase and waived opening argument. But counsel did argue that the lack of family members present to testify should be considered a mitigating factor. The State also did not present any witnesses or

---

[3] 539 U.S. 510 (2003).

evidence at the penalty phase. Further, Carruth's counsel read a stipulation into the record that Carruth had no significant prior criminal history and argued this should also be a mitigating factor. Counsel reiterated these points to the jury during closing arguments, and also emphasized that Carruth did not pull the trigger on the gun that killed Brett.

Ultimately, the jury voted unanimously in favor of death. At sentencing, Carruth's counsel again argued the above as mitigating circumstances, and contended that evidence was disputed as to whether Carruth had specific intent to kill anyone. Considering all before it, the state court found the existence of all four aggravating factors: the murder was committed during a (1) robbery, (2) burglary, (3) kidnapping, and (4) the murder was especially heinous, atrocious, or cruel. The trial court found one statutory mitigating factor—Carruth had no significant prior criminal history. With regard to non-statutory mitigation, the trial court found that the absence of Carruth's family at the trial proceedings did not constitute a mitigating circumstance. Similarly, the trial court found that the fact that Carruth did not procure or possess the murder weapon was not an additional mitigating circumstance, noting that the evidence at trial established that Carruth "told his accomplice, 'I've done one, now you do one.'" Accordingly, the trial court determined that the aggravating circumstances outweighed the mitigating circumstances, and Carruth was sentenced to death for the capital crimes.

### B. *Procedural History*

For clarity, the procedural history is subdivided into five parts: (1) direct appeal, (2) first Rule 32 proceeding and appeals; (3) Rule 2(b) motion in the Alabama Supreme Court; (4) second Rule 32 proceeding and appeals; and (5) federal habeas proceedings.

### i.    Direct Appeal

Appointed counsel, Stephen Guthrie, represented Carruth on appeal. Guthrie submitted an appeal to the ACCA regarding Carruth's murder and attempted murder convictions, which was denied, and an application for rehearing, which was also denied. Guthrie failed to submit a certiorari petition to the Alabama Supreme Court and the United States Supreme Court. Guthrie attributes this failure to lack of notice—he moved offices and failed to inform both the ACCA and Carruth of his change of address.

Once Carruth realized the avenue for appeal was officially foreclosed, he then filed a petition for post-conviction relief under Alabama Rule of Criminal Procedure 32. The procedural history becomes a bit thorny here, as (1) Carruth's Rule 32 proceeding was bifurcated and, (2) within the timeframe of the two Rule 32 appeals, Carruth filed a Rule 2(b) motion under the Alabama Rules of Appellate Procedure (ARAP) in the Alabama Supreme Court.

### ii.    First Rule 32 Proceeding and Appeals

Carruth's Rule 32 petition listed a myriad of grounds for relief. Pertinent to this appeal, he listed the following grounds for

relief, among others: (1) he was entitled to an out-of-time appeal, since (a) his right to counsel under the Sixth and Fourteenth Amendments was violated and (b) Alabama Rule of Criminal Procedure 32.1(f)[4] applied, which allowed him an avenue for appeal; (2) ineffective assistance of counsel in violation of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution; (3) prosecutorial misconduct; and (4) juror misconduct. The circuit court initially granted the out-of-time petition in a single page order. The order did not state which ground was meritorious and reserved ruling on the remaining Rule 32 issues until after the Alabama Supreme Court's ruling on the certiorari petition.[5]

The State appealed the circuit court's ruling and, while the appeal was pending, Carruth filed the Rule 2(b) motion, discussed below. The ACCA reversed the circuit court in May 2008, stating (1) certiorari was discretionary; (2) Rule 32.1(f) was inapplicable; and (3) no Sixth Amendment right to counsel exists for certiorari petitions. In Carruth's petition for certiorari, he asked the Alabama Supreme Court to "affirm the circuit court's order granting him an out-of-time petition for writ of certiorari in this Court." He argued:

---

[4] "[A]ny defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief . . . [when t]he petitioner failed to appeal within the prescribed time from the conviction or sentence itself . . . and that failure was without fault on the petitioner's part."

[5] The order stated the following: "To the extent this court has jurisdiction . . . Carruth is granted permission to file an Out of Time Petition for Writ of Certiorari to the Alabama Supreme Court."

(1) he was entitled to counsel under § 15-12-22 of the Alabama Code, and Rule 39(a)(2) under ARAP mandates counsel "shall" file for certiorari in death cases; (2) his Sixth Amendment right to effective assistance of counsel was violated; and (3) he was entitled to an out-of-time appeal under Rule 32.1(f). The Alabama Supreme Court granted certiorari, then quashed the writ, holding (1) a Rule 2(b) motion was the appropriate avenue to bring this request before the court; (2) Carruth already brought the 2(b) motion, which, as we explain further below, was denied; and (3) bringing the issue through a Rule 32 petition could not provide the relief requested. Despite this, Carruth still filed a petition for certiorari in the U.S. Supreme Court, which was denied.

### iii.    Rule 2(b) Motion in Alabama Supreme Court

In the Rule 2(b) motion, Carruth argued that his counsel violated Rule 39(a)(2) of ARAP, that the Alabama Supreme Court could correct the violation by granting an extension of time under Rule 2(b), and that, under Rule 39(a)(2)(C), the court "may enlarge the time for filing the petition." But Carruth did not argue ineffectiveness of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). Therefore, no federal basis of relief was invoked. The Alabama Supreme Court denied the motion in February 2008.

### iv.    Second Rule 32 Proceeding and Appeals

With the out-of-time issue exhausted, the circuit court lifted the stay of the Rule 32 proceeding and turned to the remaining issues, and the State filed a motion to summarily dismiss the petition in its entirety. The circuit court held a hearing on February 3, 2012,

on the State's motion to dismiss. Following the hearing, the circuit court summarily dismissed many of Carruth's remaining Rule 32 claims from his amended petition. Carruth was given deadlines to amend any claim not dismissed, and an evidentiary hearing was scheduled for September 17, 2012, to address the lingering claims.

One of the remaining issues involved premature jury deliberations. At the evidentiary hearing, three jurors—B.T., J.H., and R.M.—were brought in to testify. The jurors provided mixed testimony as to whether and to what extent they discussed Carruth's guilt prior to the jury instructions being given. R.M. and J.H. testified that they played Rummikub with other jurors at night after the trial activities for that day had concluded.[6] When asked if the jurors discussed facts about the case during Rummikub, R.M. testified: "Absolutely not. The judge told us not to discuss it. We did not." R.M. was also asked about whether any premature deliberations occurred during breaks in the jury room, to which R.M. responded in the negative.

J.H.'s testimony muddied the factual waters. During J.H.'s questioning, J.H. attested that J.H. and three other jurors played Rummikub. During Rummikub, J.H. and the other jurors did discuss the case but "not in depth," which included "mention[ing] that a piece of evidence was unusual or something we didn't expect." When asked if there was discussion regarding the effect of evidence presented on the ultimate issue of Carruth's guilt, J.H. responded:

---

[6] The jury was sequestered during the trial.

"There was never a discussion of that to my knowledge." J.H. was presented with a document purporting to be J.H.'s statement, which J.H. identified, that was admitted for impeachment purposes only. The document stated J.H. and other jurors talked about what sentence Carruth would receive when they talked about the trial. Yet during J.H.'s testimony, J.H. disavowed the statement. J.H. stated, "I gave the statement, but I don't recall the discussion." J.H. testified they had not made a final decision regarding Carruth's guilt prior to all evidence being taken and the judge instructing the jury on the law. Later, on cross examination, J.H. attested any discussions pre-deliberation were "just passing comments," those discussions did not compare to the deliberation jury room discussions, and the jurors applied the facts to the law to determine Carruth's guilt.

When B.T., an alternate juror, was questioned, B.T. stated that B.T. "really [did]n't think there was any discussion about [the evidence]. Everybody was just so disturbed over the evidence." And B.T. also said "If we ever discussed [the evidence], it was in the break room during the trial. We never communicated after we went back to the hotel." B.T. stated the extent of any discussions was "I think Brooks was the one, Brooks did this. I never recall anytime anybody say that he was guilty, that he needs to be sentenced or anything to that effect."

Also considered at the evidentiary hearing was ineffective assistance of counsel at the penalty phase. Armstrong testified that he had multiple conversations with Carruth and family regarding

investigation and mitigation efforts, and that the evidence against Carruth was "insurmountable." When he asked Carruth about information from his past that could help with mitigation, Carruth indicated that he had a good childhood and there would be nothing to find. While Armstrong conceded his investigation was probably deficient in light of *Wiggins*, he felt confident that Carruth was not prejudiced in light of the evidence presented at trial and lack of helpful mitigating evidence from Carruth's past.

Finally, Carruth sought to call Janann McInnis, a mitigation specialist, to present testimony as to what several individuals she interviewed as part of the postconviction investigation told her about Carruth. The State objected on hearsay grounds, and the Rule 32 court sustained the objection, but nevertheless allowed a proffer of her testimony.

On December 26, 2012, the circuit court denied relief on the last issues, including juror misconduct. The court held that some jurors may have made "passing comments" regarding the evidence, but no comments judged Carruth's guilt or innocence until after the official jury deliberations began. The court also denied the ineffective assistance at penalty phase claim, relying on Armstrong's testimony that Carruth indicated that nothing in his past would assist with mitigation.

Carruth appealed to the ACCA, which affirmed and denied rehearing. As to the pre-deliberation juror statements, the ACCA stated the circuit court gave little weight to J.H.'s out-of-court statement and resolved contradictions in favor of J.H.'s in-court

testimony—a credibility determination that was entitled to deference under Alabama law. This, the ACCA said, it did not find contrary to the evidence, and the circuit court did not abuse its discretion. Regarding the alleged prosecutorial misconduct, the ACCA found that Carruth failed to allege the jury was affected by the prosecutor's statement. Instead, Carruth's claim was not sufficiently specific, and the ACCA stated the circuit court was correct to dismiss the claim under Alabama Rule of Criminal Procedure 32.7(d). The Alabama Supreme Court denied certiorari.

### v.    Federal Habeas Proceedings

Carruth filed his § 2254 petition in the Middle District of Alabama, which the district court denied. Then the district court granted a certificate of appealability on the six issues identified above. Carruth timely appealed.

## II.    Analysis

We review a court's decision to deny a § 2254 petition de novo, applying a de novo standard to legal conclusions and a clear error standard to factual findings. *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1258 (11th Cir. 2016). This includes ineffective assistance claims, which are mixed questions of law and fact. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1034 (11th Cir. 2022) (en banc).

When a state court has adjudicated a habeas petitioner's claim on the merits, we review its decision under the Antiterrorism and Effective Death Penalty Act's (AEDPA) "highly deferential standards." *Davis v. Ayala*, 576 U.S. 257, 269 (2015). Under AEDPA,

a federal court can grant relief to a state prisoner *only* if he shows that the state court's determination of his claim resulted in a obviously wrong decision under 28 U.S.C. § 2254(d)(1)–(2).

### § 2254(d)(1) review

We must decide whether the ACCA's decision that Carruth was not deprived of an impartial jury was "'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Borden v. Allen*, 646 F.3d 785, 818 (11th Cir. 2011) (quoting 28 U.S.C. § 2254(d)(1)). An opinion is "contrary to" clearly established federal law if it makes a conclusion of law in opposition to the Supreme Court or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a [different] result." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Our review is limited to the evidence produced in the state court proceedings, "both direct and collateral." *Frazier v. Bouchard*, 661 F.3d 519, 532 n.17 (11th Cir. 2011). "Overall, 'a state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision.'" *Pye*, 50 F.4th at 1034 (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)) (alteration adopted). In other words, to deem a state court's application of Supreme Court precedent "unreasonable," we must find that the decision was not only "incorrect or erroneous"—it must have been "objectively unreasonable." *Wiggins*, 539 U.S. at 520–21. This standard is "difficult to meet and . . . demands that state-court decisions be given the benefit of the doubt."

*Raulerson v. Warden*, 928 F.3d 987, 996 (11th Cir. 2019) (internal quotation marks omitted).

### § 2254(d)(2) review

In the alternative, we grant a writ of habeas corpus if the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state habeas court's findings of fact are presumed to be correct and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1).

"Even if the state court made a clearly erroneous factual determination, that doesn't necessarily mean the state court's 'decision' was 'based on' an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Pye*, 50 F.4th at 1035 (quoting 28 U.S.C. § 2254(d)(2)). "Depending on the importance of the factual error to the state court's ultimate decision, that decision might still be reasonable even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an unreasonable determination of the facts and isn't based on any such determination." *Id.* (internal quotation marks omitted). Ultimately, *Pye* requires us to look at "the *reasons* for the state court's decision" and then "consider any potential *justification* for those reasons." *Id.* at 1036.

### A. *Deprivation of an Impartial Jury*

Juror contact with evidence that does not "come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel" is presumptively prejudicial. *Turner v. Louisiana*, 379 U.S. 466, 473 (1965); *see also Remmer v. United States*, 347 U.S. 227, 229 (1954) ("In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is . . . deemed presumptively prejudicial."). Yet the government can overcome this presumption if it shows that contact with the juror did not harm the defendant. *Remmer*, 347 U.S. at 229. The U.S. Supreme Court has not held that another juror's opinion is extrinsic evidence within the scope of this rule.

Carruth claims that the jurors' pre-deliberation statements were presumptively prejudicial and that the State has not overcome the presumption of prejudice. The Commissioner relies on the district court's determination that the juror misconduct claim "lacked merit," stating this was not an unreasonable application of the law or determination of the facts below.

Carruth's claim does not survive AEDPA deference. Since the ACCA was the last state court to make a merits determination, AEDPA applies. Under § 2254(d)(1), Carruth fails to cite clearly established federal law that shows his claim merits relief. He relies on *Irvin v. Dowd* for the proposition that jurors can be removed for cause during jury selection if the juror forms an opinion on the

case before trial and cannot set aside that opinion. 366 U.S. 717, 723 (1961). While acknowledging that the facts in *Irvin* dealt with venire members, not the already-empaneled jury context, Carruth urges the state court unreasonably applied Supreme Court precedent by not applying the principle from *Irvin* to his case. *Williams*, 529 U.S. at 407 (stating "an unreasonable application of [Supreme Court] precedent [occurs] if the state court . . . unreasonably refuses to extend that principle to a new context where it should apply"). But Carruth's extension argument is unpersuasive, and we decline to adopt it.

Carruth's claim also does not survive under a § 2254(d)(2) analysis. The Supreme Court has never held that a juror's expressed opinion is officially extrinsic evidence. Even assuming *arguendo* that it were, testimony elicited at the evidentiary hearing suggests otherwise. Any elicited comments were brief, and the jurors did not opine on Carruth's ultimate guilt or innocence. J.H.'s statement was introduced only to impeach, not as substantive evidence, and it was not objectively unreasonable for the court to determine that evidence was less persuasive than the testimony given in court. The adjudication of the juror misconduct claim did not run contrary to the limited applicable Supreme Court precedent in *Remmer*, and it was not based on an unreasonable determination of the facts considering the evidence presented in the state court hearing.

Carruth cannot show under § 2254 that the ACCA was unreasonable as to its factual determinations or that it made a determination contrary to law. Thus, his claim fails.

B.  *Ineffective Assistance of Counsel: Failure to File Certiorari Petition and Procedural Default*

Whether a petitioner has procedurally defaulted a particular claim is a mixed question of fact and law, which this Court reviews de novo. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). "Only individual *claims*, and not the [petition] containing those claims, can be procedurally defaulted." *Artuz v. Bennett*, 531 U.S. 4, 9 (2000).

As long as a State appellate process exists, follows "firmly established and regularly followed" rules, *Ford v. Georgia*, 498 U.S. 411, 424 (1991), and is not "ineffective to protect the rights" of the petitioner, 28 U.S.C. § 2254(b)(1)(B)(ii), the petitioner must navigate the State appellate process under the State's rules. State prisoners must allow full review of constitutional issues by state courts "by invoking one complete round of the State's established appellate review process" prior to federal habeas review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Not adhering to a State's procedural rules to present federal claims deprives the state courts of the opportunity to address those claims. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Therefore, when a habeas prisoner fails to present his claims to the state court in a timely and proper manner, and the state court refuses to address the merits based on state law, the federal habeas court is precluded from hearing the merits, absent a showing of cause for the failure to properly present the claim and actual prejudice, or that the failure to consider the claim would result in a fundamental miscarriage of justice. *Wainwright v. Sykes*, 433 U.S. 72, 81–88 (1977); *Coleman*, 501 U.S. at 749–50; *Marek v. Singletary*, 62 F.3d 1295, 1301–02 (11th Cir. 1995).

22-13548               Opinion of the Court                    19

Generally, procedural default can arise in two ways: (1) when the state court correctly applies a procedural default principle of state law and concludes that the petitioner's federal claims are barred; or (2) when the petitioner "never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred" in state court. *Bailey v. Nagle*, 172 F.3d 1299, 1302–03 (11th Cir. 1999) (per curiam). In the first instance, a federal court must determine "whether the last state court rendering judgment clearly and expressly stated that its judgment rested on a procedural bar." *Id.* at 1303. In the second instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Id.*

A procedural default can be overcome if the petitioner "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Fundamental miscarriages of justice occur only when "a constitutional violation has probably resulted in the conviction of . . . [an] innocent [person]." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quotation omitted). To determine if someone was actually innocent, petitioner must demonstrate "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.*

Attorney negligence is generally not good cause to excuse procedural default. *Coleman*, 501 U.S. at 753. Attorney performance

is only relevant if the procedural default stems from *constitutionally required* counsel's deficient performance, *see id.* at 756, or "when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding" but the prisoner did not have effective counsel in his first collateral proceeding. *Martinez v. Ryan*, 566 U.S. 1, 14 (2012); *see also Trevino v. Thaler*, 569 U.S. 413, 429 (2013).

The right to appellate counsel is guaranteed for appeals taken by right. *See Douglas v. California*, 372 U.S. 353, 356 (1963). But there is no federal constitutional right to counsel for discretionary appeals. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals."). During a discretionary appeal, the United States Constitution provides no guarantee as to the quality of counsel, and the court must revert to the general rule: "[T]he attorney is the prisoner's agent, [and] under well settled principles of agency law, the principal bears the risk of negligent conduct on the part of his agent." *Martinez*, 566 U.S. at 10 (quotations omitted).

While the Supreme Court has required trial lawyers to fulfill certain closing duties under *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000), there has not been clear guidance on whether that extends to discretionary appeals. Many of our sister circuits have similarly held that the constitutional right to appellate counsel ends upon

22-13548                Opinion of the Court                21

the first appeal as of right and, therefore, does not extend to discretionary appeals.[7]

Here, Carruth argues that his appellate counsel was ineffective for failing to file a writ of certiorari to the Alabama Supreme Court and to advise him of further appellate options. The district court determined that this claim was unexhausted and procedurally defaulted. Further, Carruth argues that his ineffectiveness claim is not barred because he raised the ineffectiveness issue in the first Rule 32 petition appeal, which was considered by the ACCA and the Alabama Supreme Court. He also claims that he raised the

---

[7] *See Folkes v. Nelsen*, 34 F.4th 258, 280 (4th Cir. 2022) ("Supreme Court case law thus supports the conclusion that the constitutional right to appellate counsel is satisfied in advance of the appellate court's decision and that counsel's role ends upon issuance of that decision."), *cert. denied* 143 S. Ct. 736 (2023); *Ahumada v. United States*, 994 F.3d 958, 960–61 (8th Cir. 2021) (holding that appellate counsel's failure to notify the defendant of the deadline and process for a discretionary petition did not run afoul of the constitutional right to appellate counsel); *Pena v. United States*, 534 F.3d 92, 96 (2d Cir. 2008) (per curiam) (finding the defendant's "claim that the filing of . . . a petition [for discretionary review] should be considered 'the last step in his first appeal as of right—not the first step of the subsequent discretionary appeal' [is] . . . . 'ingenious, but wrong'" (citation omitted)); *Jackson v. Johnson*, 217 F.3d 360, 365 (5th Cir. 2000) (holding that there is no right to counsel "after the appellate court has passed on the claims"); *Miller v. Keeney*, 882 F.2d 1428, 1432 (9th Cir. 1989) (holding that advising the defendant about discretionary review is not required because the "opportunity for direct appeal, and thus the defendant's constitutional right to counsel, has come to an end"); *but see Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 434–35 (6th Cir. 2006) (holding appellate counsel is constitutionally required to provide closing duties to a defendant, including notifying the defendant of the outcome of the appeal).

issue on a Rule 2(b) motion under ARAP directly to the Alabama Supreme Court, which was ultimately denied. Thus, he took every route for review, and his claims should not be procedurally barred or considered unexhausted.

Carruth is mistaken on both the procedural default doctrine and the merits of his appellate ineffectiveness claim.[8] Carruth's ineffectiveness claim regarding failing to file for certiorari and failure to counsel on appellate options is unexhausted and procedurally barred under the second prong of the procedural default analysis. While Carruth argued appellate ineffectiveness as grounds for an entitlement to a late certiorari petition both in his Rule 2 motion and first Rule 32 appeal, he did not raise an independent issue of ineffective assistance of appellate counsel in the second Rule 32 appeal, which dealt with the merits of his Rule 32 claims. Thereby, his appellate ineffectiveness claim was not presented to the ACCA nor the Alabama Supreme Court on the merits. Further, Carruth staked his ineffectiveness claim in the first Rule 32 appeal on ARAP and did not cite an independent federal basis for review. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (explaining that a habeas petition grounded on issues of state law provides no basis for federal habeas relief). Also, any future attempt to exhaust state remedies would be futile under the state's procedural default

---

[8] As the circuit court did not address the substance of Carruth's ineffectiveness claim for failing to file and advise, this claim is subject to de novo review. *See Pye*, 50 F.4th at 1034.

doctrine, which renders Carruth's claim procedurally barred and unexhausted.[9]

The only way Carruth could overcome the default would be by demonstrating either (1) a fundamental miscarriage of justice, i.e., convicting an innocent person, will result without excusing the default, or (2) cause for the default. Here, it is unquestionable that the evidence produced at trial, including the graphic testimony of Butch Bowyer, clearly demonstrated Carruth's guilt. As to cause, Carruth argues that his attorney's negligence in filing his certiorari petition fulfills the exception. But attorney negligence is not generally cause for default, especially when Carruth's counsel at the discretionary appeal level was not constitutionally required. Since procedural default occurred and no exception applies, we affirm the district court's determination that the claim is procedurally barred.[10]

---

[9] Carruth's only way to raise the federal issue today would be to petition the Alabama Supreme Court for a rehearing on the Rule 2(b) motion. However, the time to file such a motion for rehearing expired two weeks after the ruling on the Rule 2(b) motion. *See* Ala. R. App. P. 40(c). Also, new arguments cannot be raised for the first time in a motion for rehearing. *See Water Works & Sewer Bd. of City of Selma v. Randolph*, 833 So. 2d 604, 608 (Ala. 2002).

[10] Even if these claims were not procedurally barred or unexhausted, Carruth would still lose on the substantive ineffectiveness claims under de novo review for (1) failing to file a certiorari petition and (2) failing to inform Carruth about the rehearing denial and counsel him about future appeals because there is no right to counsel for discretionary appeals. While Carruth indicates he desired to petition for certiorari to the Alabama Supreme Court, the Constitution does not guarantee quality counsel, so the general rule applies: the principal bears the risk of negligent conduct on the part of his agent. *Martinez*, 566 U.S. at 10.

24                    Opinion of the Court                    22-13548

C. *Ineffective Assistance of Counsel: Failure to Argue Prosecutorial Misconduct*

When due process is at issue, we must consider whether the prosecution's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). We evaluate the trial record as a whole in making this determination. *See Darden v. Wainwright*, 477 U.S. 168, 181–83 (1986); *Cargill v. Turpin*, 120 F.3d 1366, 1379 (11th Cir. 1997) ("[I]solated or ambiguous or unintentional remarks must be viewed with lenity." (quotation omitted)). Our circuit utilizes a two-part test in analyzing prosecutorial misconduct claims involving a state prosecutor's closing argument, instructing district courts "to determine first whether particular arguments by a prosecutor were improper and if so, to determine what the probable effect of the improper argument was on the jury." *Wilson v. Kemp*, 777 F.2d 621, 623 (11th Cir. 1985). To determine the effect on the jury, we ask "whether there was a reasonable probability that, in the absence of the offending remarks, the . . . outcome would have been different." *Tucker v. Kemp*, 802 F.2d 1293, 1295 (11th Cir. 1986) (per curiam) (internal quotation marks omitted). "If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair." *Id.* at 1296.

---

Lastly, Carruth has also failed to establish a reasonable probability that he would have succeeded on his appeal if certiorari were granted, and therefore his claim must fail.

Carruth argues that his appellate counsel was ineffective for failing to argue on direct appeal that prosecutorial misconduct occurred during closing arguments when the prosecutor informed the jury that only the capital counts carried the punishment of life without parole or death. He maintains that this statement was "highly prejudicial because the jury cannot consider punishment during the guilt/innocence phase." In response, the State argues that this claim is unexhausted and procedurally defaulted because Carruth failed to include this claim in his application for discretionary review to the Alabama Supreme Court.

Regarding mixed questions of procedural default and merits claims in the habeas context, we may sidestep addressing procedural bar issues when the substantive issue is easily decided against the petitioner:

> The Supreme Court has explained that the independent and adequate state ground doctrine is not technically jurisdictional when a federal court considers a state prisoner's petition for habeas corpus pursuant to 28 U.S.C. § 2254 . . . . [W]hen it appears that another issue is more easily resolvable against the habeas petitioner, whereas the procedural-bar issue involves complicated issues of state law, *a federal court may avoid the procedural bar issue*.

*Muhammad v. Sec'y, Fla. Dep't of Corr.*, 733 F.3d 1065, 1072 (11th Cir. 2013) (quoting *Lambrix v. Singletary*, 520 U.S. 518, 522–25 (1997)) (cleaned up) (emphasis added).

Because the procedural bar issue was not sufficiently addressed below and the substantive issue is easily decided against Carruth, we decline to engage in the procedural bar analysis.

Evaluating the claim on the merits, Carruth still fails under AEDPA deference. We have held that denying relief under Rule 32.7(d) is a merits determination. *Williams v. Alabama*, 791 F.3d 1267, 1271 (11th Cir. 2015). As the ACCA noted, Carruth's ineffective assistance claim was denied under Rule 32.7(d). Therefore, we review this merits determination through the lens of AEDPA deference.

Under § 2254(d)(1), this determination did not run contrary to federal law, and fairminded jurists could disagree. When asserting his claim, Carruth asserted misconduct by "telling the jury during his closing argument that death would not be a possible punishment unless the jury convicted Mr. Carruth of capital murder." Carruth argued that, although counsel raised an objection to that comment, they were ineffective for failing to obtain a ruling. Carruth contended that the prosecutor's comment created a risk that the jury convicted Carruth of the capital offenses "because they were worried that otherwise he would not be punished severely enough, rather than because they were convinced of his guilt beyond a reasonable doubt." Furthermore, Carruth argued that the statement was highly prejudicial "because the jury cannot consider punishment during the guilt/innocence phase." Carruth made only a bare assertion that the prosecutor's statements put undue pressure on the jury; he failed to plead any specific facts suggesting

that the jury was actually influenced by this isolated comment. Accordingly, Carruth failed to plead facts that, if true, would have entitled him to relief under a prosecutorial misconduct theory or, necessarily, a connected ineffective assistance theory.

The ACCA did not unreasonably apply *Donnelly* by finding that counsel did not ask the jury to consider punishment in the guilt-phase. The court could be giving heavy weight to counsel's statement that the jury was "not even considering [the death penalty] now." And because the facts supporting Carruth's guilt were numerous and formidable, it cannot be said that one statement infected the entire trial. The jury was death-qualified and therefore aware of the potential penalties in this case.

And while Carruth still asserts his appellate counsel was ineffective for not raising an "apparent" meritorious claim, the law he references is not on point. Importantly, the case law Carruth cites addresses *Batson* claims—not what is at issue here, rendering it inapposite.[11] Further, the evidence against Carruth was likely insurmountable: the money traced to him, a victim's blood on his clothing, and testimony from Butch made the case against him overwhelmingly strong. Thus it cannot be said that, even if the

---

[11] The two cases cited by Carruth address *Batson* violations. *See Davis v. Sec'y for Dep't. of Corr.*, 341 F.3d 1310, 1315–17 (11th Cir. 2003) (per curiam) (holding that making a *Batson* objection at trial, but failing to renew the objection to preserve it for appeal constituted ineffective assistance); *Eagle v. Linahan*, 279 F.3d 926, 943 (11th Cir. 2001) (determining that not noticing and raising a meritorious *Batson* claim from the record constituted ineffective assistance).

comment was improper, it "infected the trial with unfairness" so significantly that Carruth was denied due process.

Because the prosecutorial misconduct claim fails, the attached ineffective assistance of appellate counsel claim is also meritless; counsel could not have been ineffective for omitting a non-meritorious point from their argument and, similarly, their performance also could not have been prejudicial. *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) ("Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit." (quotations omitted)).

### D. *Ineffective Assistance: Procedural Default & Failure to Present Mitigating Evidence*

Carruth argues that his counsel performed deficiently by failing to adequately investigate his background and failing to locate and call supporting witnesses during the penalty phase. The Rule 32 court denied this claim on the merits, but Carruth's counsel failed to appeal that denial to the ACCA. Carruth argues that the district court erred in concluding that this claim was procedurally defaulted because any procedural default should be excused due to his postconviction counsel's ineffective assistance during the Rule 32 proceedings by failing to appeal the denial of this claim.

Ineffective assistance of counsel normally does not constitute cause for procedural default; cause must be traced to an outside circumstance preventing counsel from presenting the claim. *Coleman*, 501 U.S. at 753. But the Supreme Court recognized a narrow exception to this rule in *Martinez*: ineffective assistance of

counsel at initial-review collateral proceedings may establish cause for procedural default of ineffective assistance at trial. 566 U.S. at 9. The defendant must show that his counsel was deficient under *Strickland* and that the defaulted claim is "substantial," i.e., likely meritorious. *Id.* at 14.

Counsel in capital cases have an "obligation to conduct a thorough investigation of the defendant's background." *Wiggins*, 539 U.S. at 522 (quotation marks omitted). But counsel is not bound "to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing." *Id.* at 533. In addition, *Strickland* does not force counsel to offer mitigating evidence in every case's sentencing phase. *Id.* Instead, strategic choices made "after less than complete investigation" will be deemed reasonable only to the extent that "reasonable professional judgments support the limitations on investigation." *Id.* at 521. And reasonableness can be affected by the defendant's own statements or actions. *Strickland*, 466 U.S. at 691.

Ineffective assistance of trial counsel arises under the Sixth Amendment and is evaluated using the two-pronged analysis established in *Strickland*:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's

> errors were so serious as to deprive the defendant of
> a fair trial, a trial whose result is reliable.

466 U.S. at 687. We are deferential to an attorney's real-time decisions when examining their performance. *Id.* at 689. In determining any error's prejudicial effect, the petitioner bears the burden of showing more than "some conceivable adverse effect on the defense from counsel's errors." *Id.* at 682. Instead, the defendant must show that, but-for the counsel's errors, the proceeding's outcome would have differed. *Id.* at 694. Specifically, when a petitioner challenges a death sentence, the inquiry turns on whether "'there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Stewart v. Sec'y, Dep't of Corr.*, 476 F.3d 1193, 1209 (11th Cir. 2007) (quoting *Strickland*, 466 U.S. at 695). AEDPA provides an even higher standard petitioner must meet: "When § 2254(d) applies, the question is *not* whether counsel's actions were reasonable. The question is whether there is *any reasonable argument* that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105 (emphasis added).

Carruth argues that his claim of ineffective assistance survives procedural default due to the *Martinez* exception. He claims that counsel knew the State would object to the mitigation specialist's testimony as hearsay, and counsel should have had live witnesses or "request[ed] to bring them in later." Carruth does not acknowledge that the mitigation specialist's proffer consisted of a recitation of witnesses and documents mentioned in his amended Rule 32 petition and that the mitigation specialist received

confirmation from the witnesses and documents what was alleged in the amendment was true.

Claiming that he survives the procedural bar, Carruth further claims that his trial counsel was ineffective at the penalty phase by not introducing family testimony or other facts regarding his character and life experience, including, but not limited to, the following: participating in Future Farmers of America, undergoing brain surgery as a toddler, having one leg that was shorter than the other, coming from a stable home, exhibiting high intelligence and graduating at the top of his high school class, being well-liked, experiencing a contentious divorce, and not involving himself much in his children's lives. He asserts that, had these facts been considered along with the stipulation of no significant criminal history, there is a reasonable probability he would not have been sentenced to death.

Under de novo review, Carruth's claim is procedurally barred and, assuming *arguendo* it was not, his claim would still fail. As the district court found, Carruth did not preserve the ineffectiveness claim on appeal at the state level. Carruth only argued on appeal to the ACCA that the mitigation expert's testimony should have been admitted under Alabama Rule of Evidence 102; he did not argue the merits of his penalty phase ineffective assistance claim that undergirded the necessity for the mitigation expert. Again, he abandoned the ineffectiveness claim in his petition for certiorari, where he instead focused on the mitigation expert's testimony, claiming it was not hearsay. As such, Carruth did not

invoke one complete round of the State's established appellate review process prior to federal habeas review, violating *O'Sullivan*. 526 U.S. at 845. And the *Martinez* exception does not apply in his case. Therefore, as the issue is procedurally barred and no exception applies, we do not consider it.

Because the ACCA did not rule specifically on the penalty phase ineffectiveness claim, de novo review of the district court's ruling applies. Under de novo review, Carruth fails on the merits due, in part, to his own actions—his indication to counsel that there was nothing in his background to assist in mitigation efforts. His counsel perhaps satisfied *Strickland* by not expending extra effort into mitigation when Carruth indicated that such a search would be fruitless. *See Newland v. Hall*, 527 F.3d 1162, 1202 (11th Cir. 2008) ("In evaluating the reasonableness of a defense attorney's investigation, we weigh heavily the information provided by the defendant."). Furthermore, counsel arranged for witnesses to testify during the penalty phase, but was blindsided when Carruth's family changed their minds at the last minute. Although Carruth faults counsel for not having subpoenaed them in advance of the penalty phase, there was nothing to indicate to counsel that subpoenas were needed because they had voluntarily agreed to attend.

But, even if counsel's performance was deficient in failing to investigate further, there is little evidence that Carruth was prejudiced by the omission of his family's testimony and other information regarding his upbringing. *See Harrington*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just

conceivable."). The mitigation evidence was minimal at best and paled in comparison to the brutal nature of the crime—the victim was a 12-year-old boy who was kidnapped from his home with his father over money and then was shot multiple times, killed, and thrown into a shallow grave—and the four statutory aggravating factors. The facts of this case are horrific, and the jury was resolute on his punishment as they returned a unanimous recommendation of death. *See Brooks*, 719 F.3d at 1302–03 (holding no prejudice from counsel's failure to present evidence that defendant was nice, good-natured, non-violent, and suffered from alcoholism, in light of the heinous nature of the crime); *Boyd v. Allen*, 592 F.3d 1274, 1303 (11th Cir. 2010) (finding no prejudice given "the overwhelming power of the aggravating evidence" when compared to the totality of the mitigation evidence). Since, even assuming deficient performance, counsel's actions were not prejudicial, Carruth's claim must fail.

### III.    Conclusion

For these reasons, we affirm the district court's denial of Carruth's petition for a writ of habeas corpus.

**AFFIRMED.**